## TEDERALL v. BOUKNIGHT.

1. It is the policy of the law to maintain judicial sales, and therefore a purchaser is not affected by irregularities in the proceedings or error in the judgment; but he is bound, at his peril, to see that the court had jurisdiction of the subject matter, and that the proper parties were before the court.

2. A partition ordered by the Probate Court prior to the decision of *Davenport* v. *Caldwell* (10 *S. C.*, 317) will not be declared void for want of jurisdiction in the Probate Court over the subject matter.

3. A judgment of the Probate Court, regular on its face and showing proper service on the parties to it, cannot be contradicted by parol testimony in a collateral proceeding; or from the judgment itself, it may be, that the court would assume that the summons had been properly issued and served.

4. But where the record itself showed that no summons had been issued, and that no application for appointment of guardian *ad litem* had been served, the record affirmatively shows that an infant defendant under fourteen years of age was not a party to the cause, and not bound by the judgment therein.

5. An infant defendant not personally served as required by statute, is not bound by the answer filed by her guardian *ad litem*.

Before WITHERSPOON, J., Edgefield, March, 1885.

The facts of this case are stated in the opinion of the court. The Circuit decree was as follows:

There can be no doubt that when infants are properly made parties, they are bound by the judgment or decree in such cause, and cannot impeach it collaterally. They are, however, not

bound by proceedings in which they have not been properly made parties. Was plaintiff properly made a party to the proceedings before the Probate Court for partition? In the case of *Finley* v. *Robertson* (17 *S. C.*, 435) the court say: "A due and tender regard for the rights and welfare of infants requires that the statute shall be strictly followed." What are the formalities then required by statute for making an infant a party to an action? All civil actions in courts of record shall be commenced by service of a summons. *Code*, § 148. If the action be against a minor under the age of fourteen, a copy of the summons shall be served by delivery to such minor personally, and also to his father, mother, or guardian. *Code*, § 155, subd. 2.

It is not contended that plaintiff was ever served, or any copy of summons or notice was delivered to her personally in the proceedings for partition. The plaintiff, on the other hand, swears that no papers in the partition case were served upon her; that she had no knowledge of the proceedings in the Probate Court; that she had no notice of the appointment of Wm. Brooks as her guardian *ad litem;* that Wm. Brooks is dead; that she never received from him, nor from any one else, any of the proceeds of the sale of the land by the Probate Court.

The defendants rely upon the cases of *Bulow* v. *Witte*, 3 *S. C.*, 309; *Walker* v. *Veno*, 6 *Id.*, 459; and *McCrosky* v. *Parks*, 13 *Id.*, 91, to show that plaintiff is bound by the proceedings in the Probate Court. It will be observed that the proceedings in these cases were had under the old equity system of procedure, in which there was no mode prescribed by statute for making an infant a party, except his appearance by a guardian *ad litem.* No notice of process was then required to be made upon the infant personally. In *Finley* v. *Robertson, supra*, the court held that an infant seventeen or eighteen years old was not bound by the judgment even when he had accepted service of the summons. I must conclude under the authority of this case that the judgment of the Probate Court in 1874, decreeing a sale of the land described in the complaint, is not binding upon plaintiff, and does not conclude her rights in the premises, as plaintiff was not properly made a party to such proceedings as required by statute.

In this view of the case, plaintiff would not only be entitled

to her share of the land as herein adjudged, but also the same proportion of the rents and profits of the land since January, 1875, after deducting taxes paid thereon by defendants.   There is no testimony as to the amount of taxes paid on the land, and the testimony with reference to rents and profits is not sufficiently definite to enable the court to determine the rents and profits plaintiff should be entitled to.   It must be referred back to the master to take further testimony and report as to the amount of rents and profits due by defendants to plaintiff, after deducting taxes paid.

Having concluded that plaintiff was born in July, 1861, she attained her majority in July, 1882.  I do not, however, think that defendants should be held liable to account to plaintiff for rent from the date of her majority in July, 1882, to November 14, 1883, when this action was brought, as defendants are *bona fide* purchasers, and had reason to believe that they had a good title.

I conclude as matter of fact:  (1) That plaintiff was born in July, 1861, and was under fourteen years of age in October, 1874.   (2) That no summons or notice of the proceedings for partition in the Probate Court was served upon plaintiff, or that she then had any knowledge of such proceedings, or of the appointment of Wm. Brooks as her guardian *ad litem*.   (3) That plaintiff has never received any of the proceeds of the sale of the land by order of the Probate Court.

I find as matter of law :   1.  That plaintiff, as the sole heir at law of her father, W. Mastin Stewart, is entitled to eleven-fortieths, undivided share or interest in the tract of land described in the complaint, and the same proportion of the rents and profits from said land, after paying taxes from July 1, 1875, with the exception of the period from July, 1882, to November 14, 1883, and that defendants are entitled to the remaining undivided share or interest in said land.

It is ordered and adjudged, that a writ in partition do issue according to the usual practice in this court, to divide the land described in the complaint, so as to allot to plaintiff eleven-fortieths undivided part of said tract, and to the defendants the remainder thereof; provided such division can be made without injury to the rights of either of said parties, &c.

From this decree defendants appealed upon the grounds stated in the opinion.

*Messrs. Sheppard Bros.*, for appellants.

*Mr. C. W. Creighton*, contra.

July 16, 1886. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. Many years ago (1826) William Stewart, of Edgefield County, died, leaving a will, by which he gave a tract of land in said county, containing 130 acres, more or less, to his brothers and sisters, among whom was his sister Desdemona (Desdemony), who was never married, but having an illegitimate son, William Mastin Stewart. She conveyed her interest in the said land to him, and in 1873 he died intestate, leaving as his sole heir at law one child, Mary Stewart, then under thirteen years of age. The said Mary afterwards intermarried with one Tederall, and finding that the aforesaid tract of land, in which she was informed she had an interest, was in the possession of strangers, viz., the defendants, Joseph H. Bouknight and John D. Eidson, she instituted these proceedings against them for partition of the land, and to recover her interest, whatever it might be.

The defendants, claiming the land as their own, made vigorous defence, and among other defences alleged as follows : "That in the year 1874 proceedings were filed in the Probate Court for Edgefield County by certain of the heirs (devisees) of William Stewart for the partition of the tract of land described in the complaint, and that the plaintiff herein was a party to said proceedings in the said Probate Court in the case of *W. D. McCarty et al.* v. *Mary Stewart et al.* ; that under said proceedings an order for the sale of said land was made by the said Probate Court on October (November) 2, 1874; that under said order a sale was made of said land, and that at said sale it was purchased by the defendants, who paid into the Probate Court the full amount of the purchase money, and that they have been since that time the joint owners of said land ; and that plaintiff is concluded and estopped from claiming any interest in the said land by said proceedings," &c.

It was referred to the master, S. S. Tompkins, Esq., to ascertain "the quantum of the interest claimed by the plaintiff, and to take the testimony, reserving for the court all the questions of law and fact." The master ascertained that the interest claimed by the plaintiff was thirty-three one-hundred-and-twentieths (33-120), or 11-40. He reported the record of the proceeding in probate, and the facts connected therewith, that the land was sold under it and purchased by the defendants for full value, which was paid to the probate judge, and he executed titles (December 7, 1884) to the purchasers, who have been in possession of the same ever since, claiming it as their own. Notwithstanding "the record," the plaintiff was allowed to swear that "no papers in the partition case were ever served on her; that she had no knowledge of the pendency of the action for partition, and never received from William Brooks, or any other person, any of the proceeds of the sale of said lands," &c.

The Circuit Judge held that the plaintiff, Mary, being at that time an infant, was not properly made a party in the probate proceedings for partition, and was not bound by the judgment in that case, or the sale under it, and decreed that she was entitled to recover eleven-fortieths (11-40) of the land, and rents and profits for certain years in the same proportion. From this decree the defendants appeal upon the following grounds:   1. Because his honor erred in deciding that the plaintiff, as the sole heir at law of her father (W. Mastin Stewart), is entitled to 11-40 undivided interest in the tract of land described in the complaint, and the same proportion of the rents and profits for certain years.   2. Because his honor erred in holding that the proceedings in the Probate Court in the case of *McCarty et al.* v. *Mary Stewart et al.* for partition of the land, which is the subject matter of this action, are not binding on the plaintiff, Mary Stewart, now Mary Tederall.   3. Because his honor erred in holding that the said proceedings in the Probate Court could be attacked collaterally by the plaintiff.

The Circuit Judge states that no objection below was made to "the quantum" of the plaintiff's interest as reported by the master, and as the point was not pressed in argument here, we suppose that the first exception is abandoned.

The second and third exceptions, charging error in the ruling that the sale under the judgment of the Probate Court was, as to the plaintiff, illegal and void, are pressed most earnestly. It is urged with force that the defendants, having purchased the land and paid for it at a judicial sale, cannot be affected by any secret vice in the judgment authorizing the sale, of which they had no notice, but that all the parties to the probate proceeding are bound by it and estopped from assailing it. It is undoubtedly the policy of the law to maintain judicial sales, wherever it can be done without violating principle or doing injustice; and in this view it is held that a purchaser at such a sale is in no way responsible for mere irregularities in the proceedings, or even error in the judgment, under which the sale is made.

There are, however, two matters as to which purchasers are required at their peril to make inquiry, viz., that the court ordering the sale had jurisdiction of the subject matter, and that all proper parties were before the court when the order was made. *Trapier* v. *Waldo*, and authorities, 16 *S. C.*, 282. The partition proceedings in the Probate Court, under which the sale was made, were prior to November 27, 1878, when the judgment in the case of *Davenport* v. *Caldwell* was filed; and therefore it would seem that under the authority of *Herndon* v. *Moore* (18 *S. C.*, 339), we must consider the case precisely as if the act of the legislature, which gave to the Probate Court the power to partition lands, was constitutional and valid. It follows that, so far as the rights of the parties before the court are concerned, it must be assumed that the Probate Court, which ordered the sale, had jurisdiction of the subject matter.

But it is alleged that the plaintiff, then a minor of tender years, was not properly a party before the court in the probate proceeding, and therefore the sale as to her was, and is, utterly void. It is familiar doctrine that a judgment binds only those who are parties and their privies; but a judgment is in its character final and conclusive, and how can the allegation that a particular person was not made a party be shown? The judgment presumes it until the contrary appears. It is held that a judgment, "regular on its face," must be taken to be an absolute verity, and is beyond the reach of contradiction or assault in a collateral man-

ner, as in this case. That is to say, as we understand it, such a judgment can only be assailed by a direct proceeding instituted for that purpose. Therefore, if the proceedings in the Probate Court were "regular on their face," it was error to admit parol testimony tending to contradict the record and to annul the sale as to the plaintiff. It is settled that a purchaser for value at a judicial sale, without notice of the extrinsic facts, which are relied on to impeach the judgment, cannot be affected thereby; that such a purchaser without notice, under proceedings regular upon their face, and had in a court of competent jurisdiction, is not affected by any mere error of the court for which judgment might be reversed on appeal, nor for any secret vice in the judgment not appearing on the face of the record, and which can be made to appear only by the production of extrinsic evidence. See *Turner* v. *Malone*, 24 *S. C.*, 398, and *Quinn* v. *Wetherbee*, 41 *Cal.*, 409.

The question, then, is whether the probate proceedings "were regular on their face," showing that Mary Stewart was properly made a party. This must be determined by an inspection of the record itself, which was introduced by the defendants, and in such issues is always admissible, whether the proceeding is collateral or direct. At that time Mary Stewart was an infant, as the judge found, under fourteen years of age. In such case the law is very exacting, requiring that a copy of "the summons shall be delivered to the infant personally, and also to his father, mother, guardian, &c., or if there be none within the State, then to any person in whose service he may be employed," &c. *Code*, § 155, subd. 2. When an infant has been thus made a party, he can only appear by guardian *ad litem*, appointed, if the infant is under fourteen years, upon the application "of any other party to the action, or of a relative or friend of the infant, after notice of such application being first given to the general or testamentary guardian of such infant, if he has one; if he has none, then to the infant himself, if over fourteen years, * * * or if under that age, &c., to the person with whom such infant resides," &c. *Code*, § 137.

In view of these express requirements of the law, were the probate proceedings in partition "regular on their face," showing

that Mary Stewart was properly made a party? The record does show that Mary was named in the petition as one of only two defendants, the other being William Brooks, as administrator of the estate of her father (W. M. S.), but not her general guardian; that Brooks petitioned the probate judge to be appointed her guardian *ad litem*, stating therein that his said granddaughter "is desirous of having a guardian *ad litem* appointed to appear and answer in her behalf;" that he was so appointed and answered, submitting her rights, and for himself, as administrator, consenting to the partition prayed for. The record, however, failed to show that the petition prayed for any process to bring the two defendants into court—that any "summons" was issued at all, or that notice was given of the appointment of guardian *ad litem*, If, however, this were all, and the record in all other respects was regular, it may be that the court would presume that a "summons" issued and was served, and that proper notice was given of the appointment of Brooks as guardian *ad litem*, upon the ground that the Probate Court having rendered judgment in the case, it will be assumed that, before doing so, it took care to require the performance of everything made necessary to have the parties named as defendants brought before the court.

But upon a careful examination of the whole record, it appears upon its face that the application of Brooks to be appointed guardian *ad litem*, his appointment as such, his answer and consent to the partition, and the final order of the probate judge (no commission issued) directing sale of the land, were all filed on the same day, viz., November 2, 1874, and the land was actually sold on the succeeding salesday of December. Notwithstanding a strong disposition to support judicial sales, we cannot resist the conclusion that these facts appearing in the record itself fully rebut any presumptions arising from the existence of the judgment, and show affirmatively that the probate partition was a mere consent proceeding on the part of Brooks, the only adult defendant, who undertook to act for his little granddaughter, Mary, and that she had in fact no notice whatever, either of the proceeding, or that he had procured himself to be appointed her guardian *ad litem*. It may be that it was considered unnecessary to perform what seemed to be an unmeaning ceremony

in serving a copy of summons, and in giving notice to an infant incapable from her years of comprehending the transaction or its purport and object.    But the provisions of the law upon the subject are minute and positive.    The court, always anxious to protect the rights of infants, must assume that there was some good reason for all the requirements, and enforce them.    At all events, we have not, for the reason assigned, or any other, the dispensing power.

The cases in our own Reports principally relied on for the defendants were *Bulow* v. *Witte*, 3 *S. C.*, 309 ; *Walker* v. *Veno*, 6 *Id.*, 459; and *McCrosky* v. *Parks*, 13 *Id.*, 92.    It will be observed, however, that all these cases involved the question as to what was necessary to make infants parties under the old practice in chancery and the court of ordinary, which prevailed before the adoption of the code in 1870.    But the case of *Finley* v. *Robertson*, 17 *S. C.*, 435, and the late case of *Riker* v. *Vaughan*, 23 *S. C.*, 187, were decided under the provisions of the code cited above.[1]    In the latter case the court held that "jurisdiction of the person of an infant can only be obtained by pursuing the mode prescribed by statute."    We agree with the Circuit Judge, that the proceedings in the Probate Court were not "regular on their face," but, on the contrary, show that Mary Stewart, named as an infant defendant, was never legally made a party, and that the judgment and order of sale in probate were, as to the said Mary, *coram non judice*, and void.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.