(No. 14379.—Reversed and remanded.)

John F. McCarthy *et al.* Appellants, *vs.* Thomas Cain *et al.* Appellees.

*Opinion filed February 22, 1922.*

1. Minors—*when judgment or decree against interests of minor may be set aside.* The rule that a judgment or decree against the interests of a minor without a guardian *ad litem* to represent him is voidable and may be set aside on proper motion is applicable to a case where the guardian *ad litem* appointed makes no effort to protect the minor's rights against parties having adverse interests.

2. Same—*guardian ad litem must make some effort to protect minor's rights.* The appointment of a guardian *ad litem* is not a mere formality, and while such guardian is not warranted in interposing useless or vexatious defenses, it is his duty to understand the cause and make such defenses as are necessary to protect the apparently clear rights of the ward.

3. Wills—*when order denying probate will be set aside on petition of minors.* Where the guardian *ad litem* appointed to represent minor devisees in a proceeding to probate a will giving two-thirds of the land to the minors does not appear at the hearing and makes no effort to sustain the will, an order refusing probate, the effect of which deprives the minors of all interest in the estate, will be set aside upon a petition of the minors, by their next friend, showing the facts and setting up an apparently meritorious case in their favor.

Appeal from the Circuit Court of Macoupin county; the Hon. Frank W. Burton, Judge, presiding.

T. K. Rinaker, and Thomas Rinaker, for appellants.

Jesse Peebles, and A. H. Bell, for appellees.

Mr. Justice Dunn delivered the opinion of the court:

Joseph Cain, a resident of Macoupin county, died on February 25, 1920, leaving an estate consisting of 240 acres of land and personal property worth about $2000. His heirs were his brother, Thomas Cain, his sister, Agnes McCarthy, and the five children of a deceased sister named Costello. On the day before his death he signed an instru-

ment purporting to be a will, whereby, after directing the
payment of his debts and funeral expenses, he bequeathed
all his personal property to his sister, Agnes McCarthy,
after the payment of $100 to each of the five children of
his deceased sister.  His real estate he devised in two par-
cels to his nephews John Francis McCarthy and Joseph
Thomas McCarthy, who were the sons of his sister, Ag-
nes, and were sixteen and seventeen years old, respectively,
and any other real estate which he might own at his death
he directed should be divided between these two nephews
equally.  He appointed his sister executrix without bond.
This instrument was filed in the county court on March 1,
1920, and on March 4, 1920, Agnes McCarthy filed a peti-
tion for its probate.  On a hearing on March 29 probate
was refused.  On January 11, 1921, a petition was filed in
the county court of Macoupin county by John F. McCarthy
and Joseph T. McCarthy by their next friend, John Mc-
Carthy, who was their father, to vacate and set aside the
order refusing probate on the ground of fraud, accident
and mistake, alleging that that order was a fraud on the
rights of such infant petitioners, because it was a result of
the testimony of the subscribing witnesses, who failed to
understand and appreciate the meaning of the questions put
to them concerning the execution of the will, in that they
understood the questions put to them concerning the sanity
of the testator to require positive answers as to actual san-
ity and not merely their opinion as to such sanity; that the
witnesses at the time of the execution of the will believed
the testator was of sound mind, capable of transacting ordi-
nary business, and that he, in fact, did then know what his
property consisted of and to whom he wanted it to go upon
his death; that their guardian *ad litem* was not present at
the hearing and did not participate in it; that had he done
so or taken an appeal proper evidence could have been pro-
duced to protect the rights of the petitioners, and that the
failure of the guardian *ad litem* to properly protect their

interests by cross-examination, appeal or otherwise, consti-
tuted fraud upon them and the court. This petition was
accompanied by affidavits of both the subscribing witnesses
to the will sustaining the allegations of the petition as to
them, and the affidavits of four other persons who were
well acquainted with the testator and stated that he was of
sound mind and memory and capable of transacting ordi-
nary business. The petition was dismissed by the county
court on March 8, and an appeal was taken to the circuit
court, where the petition was amended so as to aver that
after the refusal of the county court to admit the will to
probate, the petitioners' mother, Agnes McCarthy, had pre-
pared a bond to take an appeal to the circuit court but was
unable to procure sureties upon the bond, the amount of
which had been fixed at $2000, and that she was by the per-
suasion and solicitation of her brother induced to enter into
an agreement with him whereby she agreed to take no ap-
peal in the matter of the probate of the will. All of these
actions, the petitioners say, were hostile to their interests
and due to the ignorance and the misinformation of their
mother and her inability to properly care for and pro-
tect their rights in the premises. The stipulation between
Thomas Cain and Agnes McCarthy was filed with the
amendment to the petition, and after reciting that the pur-
ported will was offered for probate and rejected and no ap-
peal had been taken to that time, April 16, 1920, it recited,
also, that Mrs. McCarthy had filed a petition claiming to be
the owner of an interest in some cattle which had been ap-
praised as the property of the estate, which petition was
pending, and that she and Thomas Cain, who had been ap-
pointed administrator of the estate, desired to adjust all con-
troversies growing out of the matter without unnecessary
litigation or expense, and therefore agreed that Mrs. Mc-
Carthy should dismiss her petition concerning the matter of
the cattle and should not perfect any appeal or institute any
proceedings in any court concerning the probate of the will

but that the property of the estate should be divided as intestate property, and that Thomas Cain should remain administrator of the estate and the estate should be administered as though Joseph Cain had died intestate, with the following exceptions: First, the note for the sum of $1000 payable to Mrs. McCarthy, on which Thomas Cain was surety, should be paid by the administrator out of the estate, and he was to allow a claim against the estate for that purpose. In addition to this he should pay to Mrs. McCarthy one-half the net proceeds of the sale of the cattle described in the petition which Mrs. McCarthy filed in the county court, and that the payment of the note and one-half of the proceeds of the cattle should be a complete settlement of all matters in difference between the parties, and no other claims for services should be presented against the estate by Mrs. McCarthy or any of the members of her family, and costs of the litigation already incurred should be paid out of the estate. At the September term, 1921, of the circuit court additional affidavits were filed in support of the petition, and on motion of the respondents the transcript of the testimony of the subscribing witnesses taken before the county court was permitted to be filed. The petitioners moved for leave to produce in open court the subscribing witnesses to the execution of the will, but the court denied this motion, and Thomas Cain having moved to dismiss the petition, his motion was allowed and the petition was dismissed at the costs of John McCarthy, the next friend. The petitioners have appealed from this order.

No complaint is made that the order denying probate of the will was not in regular form or that the court had not jurisdiction of the subject matter or the parties. If the petitioners had been adults they would have no ground for relief from the order, but they were infants,—the objects of the special care of the court,—and their claim is that by reason of the fact that the interest of their mother, the petitioner who presented the will for probate, was ad-

verse to the probate of the will and to their interests, the fact that the guardian *ad litem* who was appointed to represent them did nothing to protect their interests, and the fact that the witnesses to the will, whose examination and cross-examination was conducted by persons interested in preventing probate of the will, were misled as to the character of the opinion required of them as to the sanity of the testator, the proceeding constituted a fraud upon the petitioners and upon the court. The petition charges that the petitioners were not represented on the hearing, that the guardian *ad litem* was not present and did not participate in it, and the affidavit of the official court reporter who reported the evidence on the hearing was that she did not see the guardian *ad litem* in the court room on that day.

A judgment or decree against a minor without the appointment of a guardian *ad litem* to represent him in the suit is voidable and may be set aside by a proper motion made in the court where the judgment or decree was rendered and the minor allowed to make his defense, and this may be done at a term subsequent to that in which the judgment or decree was rendered. (*Simpson* v. *Simpson,* 273 Ill. 90; *Peak* v. *Shasted,* 21 id. 137; *Hall* v. *Davis,* 44 id. 494; *White* v. *Kilmartin,* 205 id. 525.) In the case last cited it was held to be error to dismiss a bill to contest a will without appointing a guardian *ad litem* for minor defendants whose interests are the same as that of the complainants and who were defaulted, and it was said: "We have repeatedly held that where a guardian *ad litem* is appointed whose interests are in any manner hostile to the interest of the minor such appointment is reversible error." In *Stunz* v. *Stunz,* 131 Ill. 210, it is said to be "the duty of the guardian *ad litem,* when appointed, to examine into the case and determine what the rights of his wards are and what defense their interest demands and to make such defense as the exercise of care and prudence will dictate. He is not required to make a defense not warranted by

law but should exercise that care and judgment that reasonable and prudent men exercise, and submit to the court for its determination all questions that may arise and take its advice and act under its direction in the steps necessary to preserve and secure the rights of the minor defendants. The guardian *ad litem* who perfunctorily files an answer for his ward and then abandons the case fails to comprehend his duties as an officer of the court." This seems to have been the course pursued by the guardian *ad litem* in this case. It was his duty, as was further said in the case just cited, to have understood the cause and the rights of the parties and to have called the attention of the court to them. While the guardian *ad litem* will not be warranted in interposing useless or vexatious defenses, the law contemplates a defense in fact so far as necessary to protect the rights and interests of the ward.

The appointment of a guardian *ad litem* is not a mere formality, and unless it is so, no reason can be given for setting aside the judgment or decree against a minor without the appointment of a guardian *ad litem* to represent him in the suit which is not equally applicable to a judgment where a guardian *ad litem* has been appointed but has wholly failed to represent the minor in the suit and has permitted judgment to be entered against him without presenting any defense or taking any action to protect the minor's interests. It is not a sufficient answer to say that the record shows that the court appointed a guardian *ad litem,* when the proof shows that beyond the naked appointment nothing whatever was done to call the rights of the minors to the attention of the court, to present their interests and claim for them such protection as under the law they were entitled to. In this case more than four-fifths of the estate consisted of real estate and the will devised it all to these two minors. The petition for probate was presented by their mother, who would inherit one-third of the estate if the will was not admitted to probate. The probate was

opposed by their uncle, Thomas Cain, who would also inherit one-third of the estate. The minors themselves were not heirs of their uncle, the testator. The witnesses to the will were examined in chief and were then cross-examined by Thomas Cain, the uncle. No examination or cross-examination was attempted in the interest of the infants. It appears from the affidavits of the witnesses attached to the petition that they misunderstood the meaning of the questions put to them on the hearing as to the testamentary capacity of Joseph Cain, and understood those questions to be as to the actual sanity or insanity of the testator rather than to the opinion and best judgment of the witnesses, and that they then honestly believed, and still believe, that at the time Joseph Cain made his will he was of sound mind and memory. Had the guardian *ad litem* performed his duty at the hearing the will might or might not have been admitted to probate, but the case of the minors who were interested would have been presented to the court and their rights and interests protected, and this was not done. Everybody in court was hostile to the minors. The guardian *ad litem* abandoned the conduct of the hearing to the two heirs, who would receive two-thirds of the estate if the will was not admitted to probate, and made no effort to represent the minors, with the result that they lose the 240 acres of land devised to them while those to whom the guardian *ad litem* surrendered the hearing profit to the extent of two-thirds of their loss. In view of all the circumstances in the case, the order denying probate of the will should be set aside and a hearing had upon the petition to probate it, at which the interests of the minors shall receive actual consideration and protection.

The judgments of the circuit court and the county court will be reversed and the cause remanded to the county court, with directions to hear the petition for the probate of the will upon its merits.

*Reversed and remanded, with directions.*