**Ricky DIXON, by his Guardian ad Litem, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

Civ. A. No. 2803.

United States District Court
W. D. South Carolina,
Spartanburg Division.

Sept. 21, 1961.

Harvey W. Johnson, James B. Stephen, Spartanburg, S. C., Jonathan Z. McKown, Gaffney, S. C., for plaintiff.

James D. Jefferies, Asst. U. S. Atty., Greenville, S. C., Joseph E. Hines, U. S. Atty., Spartanburg, S. C., for defendant.

WYCHE, Chief Judge.

This is an action under the Federal Tort Claims Act (28 U.S.C.A. § 1346).

The case is now before me upon the motion of the defendant to "dismiss plaintiff's suit * * * insofar as recovery therein (is) in excess of Two Thousand and No/100 Dollars ($2,000.-00) and to limit this defendant's liability, if any, to said amount upon the following grounds: (1) Plaintiff heretofore filed a claim with an agency of the defendant for money damages for the personal injuries set forth in the complaint herein for the sum of Two Thousand and No/100 Dollars ($2,000.00) and subsequent to an administrative denial of said claim this suit was filed seeking recovery in the amount of One Hundred Thousand and No/100 Dollars ($100,000.00) alleging the same personal injuries as were used as a basis for the claim above referred to without alleging newly discovered evidence or intervening facts and that recovery in excess of the amount claimed

is therefore precluded by law. (2) To dismiss the plaintiff's suit insofar as recovery of an amount in excess of Two Thousand and No/100 Dollars ($2,000.-00) because the Court lacks jurisdiction to enter judgment for an amount in excess thereof."

The facts in the case as far as this motion is concerned are not in dispute.

On or about February 24, 1959, Ricky Dixon, an infant two years of age, was struck by a motor vehicle of the Post Office Department in Gaffney, South Carolina, and received personal injuries that required hospitalization for approximately two weeks, as well as medical care of doctors.

The child's mother Frances D. Jolley filed a claim in which it was stated "1. Name of Claimant (Please print full name) Frances D. Jolly" in the amount of $2,000 with the Post Office Department stating that "The child suffered concussion; stayed in the hospital (Cherokee County Memorial) approximately two weeks, and remained unconscious for one week, multiple bruises and cuts, limps as a result of possible nerve injury and is still suffering the effects of the concussion by trembling and being extremely nervous at times". Mrs. Jolley did not sign the claim as guardian or parent or next friend or agent or other legal representative and nowhere in the claim does it appear that she was acting in the capacity of guardian, guardian ad litem, parent, next friend or agent or other legal representative of the infant Ricky Dixon, with any evidence of authority to act, in filing the claim. She signed the claim in her individual capacity.

The instructions on the back of the claim form furnished by the Government state: "Claim for damages to or for loss or destruction of property, or for personal injury, must be signed by the owner of the property damaged or lost or the injured person. If, by reason of death, other disability or for reasons deemed satisfactory by the ·Government. the foregoing requirement cannot be fulfilled, the claim may be filed by a duly author-

ized agent or other legal representative, provided evidence satisfactory to the Government be submitted with said claim establishing authority to act."

The claim was denied by the defendant on November 23, 1959.

On September 5, 1960, Ricky Dixon by his Guardian ad Litem filed this action under the Federal Tort Claims Act (28 U.S.C.A. § 1346) seeking the recovery of $100,000 damages from the defendant for the said injuries received by him on February 24, 1959. The complaint in this action did not contain any allegations as to newly discovered evidence or intervening facts relating to the amount of the claim filed by the mother.

The defendant filed interrogatories to determine whether the injuries complained of were reasonably discoverable prior to the filing of the claim by the mother some eight months after the accident. In answer thereto the plaintiff by his guardian ad litem stated that the injuries to the child were discovered upon examination shortly after the accident.

The defendant in its motion to dismiss relies upon the following section of the Federal Tort Claims Act (28 U.S.C.A. § 2675(b): "The claimant, however, may, upon fifteen days written notice, withdraw such claim from consideration of the federal agency and commence action thereon. Action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim."

■ The Federal Tort Claims Act does not create a cause of action but provides for the acceptance of tort liability by the United States Government "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." Feres v. United States, 340 U.S.

135, 71 S.Ct. 153, 95 L.Ed. 152. By virtue of this Act the Congress of the United States removed sovereign immunity of the United States and required the government to accept liability in such cases according to the law of the State wherein the injury occurs.

The question of whether there has been a valid release or adjudication of a minor's claim is just as important from a substantive viewpoint as whether or not a cause of action ever existed. A prior adjudication of a minor's rights, if valid, is no less a bar to recovery than the non-existence of a cause of action in negligence. A release, as such, has not been set up in this action, but by the very nature of defendant's motion to require plaintiff to reduce damages, the question arises as to whether or not, if the matter were adjudicated or settled administratively on the basis of the claim filed by the other, would the government be released?

If no valid release or adjudication of the minor's rights was obtainable under the claim, then the claim and administrative action thereon would not restrict the minor's rights under the Federal Tort Claims Act to seek his full damages as alleged in the complaint.

In the case of Rushford v. United States, D.C., 92 F.Supp. 874, affirmed 2 Cir., 204 F.2d 831, 832, which arose in New York, the plaintiff brought an action under the Federal Tort Claims Act on account of injury and the government pleaded as a defense that plaintiff's release to one of several joint tortfeasors operated to release the government. Plaintiff attempted to avoid the effect of this New York law, and contended that the Federal Tort Claims Act adopted the local law of New York *only* so far as concerns those facts that are necessary to determine whether a claim exists and that transactions which would affect the release or continued existence of a claim are not within the words: " * * * under circumstances where * * * a private person, would be liable." The Court of Appeals in this case stated, "We need not say whether the effect of a release, executed in another state, is to be determined by the law of that state, or by the law of the state where the claim arises, for the release at bar was executed in New York; and the plaintiff does not tell us to what law we are to look; whether to some 'general' or 'federal' law under the doctrine of Swift v. Tyson, 16 Pet. 1, 10 L.Ed. 865, or elsewhere. Nor need we seek any such umbrageous refuge; for it is plain that Congress meant to make the proper state law in all respects the model for the liabilities it consented to accept; and that the 'circumstances' included as much those facts that would release a liability once arisen, as those on which its creation depended. Since the release was executed in New York, it is the law of that state that controls." To the same effect is the case of Friedman v. Lockheed Aircraft Corporation. D.C.E.D.N.Y.1956, 138 F.Supp. 530.

Therefore, it appears that the federal courts have treated the validity and operation of releases as a matter of substantive law in determining whether or not such instruments constitute a bar to recovery and thus have applied state law in making their decisions.

It is clear from the provisions of the Federal Tort Claims Act, which removed governmental immunity and required the United States to accept liability under circumstances where it, if a private person, would be liable, that Congress intended for the courts to apply state law in determining the validity, operation and effect of releases or other transactions whereunder the government would attempt to bar or restrict recovery by incapacitated injured persons. The germination or continuation of a cause of action under the Federal Tort Claims Act is to be determined according to the same state law which allows it to exist. Likewise, any transactions which would restrict the measure or amount of damages must be examined in the light of the law of the state where the action arises.

Therefore, since the injuries to the plaintiff occurred in the State of South Carolina, it is the law of this State that controls.

■ Under the law of South Carolina the claim filed by his mother cannot bar the minor, nor would any release or adjudication thereon, operate in any way to bar or restrict the minor's recovery in his action by his guardian ad litem under the Federal Tort Claims Act.

As stated by Chief Justice Chase of the United States Supreme Court, while sitting as a Circuit Judge in South Carolina, "No person has a right to intervene as a volunteer for a minor child, and make a contract for the sale of a minor's estate. This is so clear that it needs no argument." Livingston v. Jordon, 15 Fed. Cas. p. 675, 676, No. 8,415.

The provisions of the law upon the subject of minors are minute and positive. The court, always anxious to protect the rights of infants, must assume that there was some good reason for all the requirements, and enforce them. See, Tederall v. Bouknight, 25 S.C., 275, at page 283.

South Carolina statutes enacted for the protection of the rights of minors are as follows:

Section 10-233, Code of Laws of South Carolina, 1952: "How guardian ad litem appointed when infant plaintiff. When an infant is plaintiff the guardian ad litem shall be appointed upon the application of the infant if he be of the age of fourteen years; if under that age, upon the application of his general or testamentary guardian, if he has any, or of a relative or friend of the infant. If made by a relative or friend of the infant, notice thereof must first be given to such guardian, if he has one; if he has none, then to the person with whom such infant resides."

Section 10-1005, Code of Laws of South Carolina, 1952: "Settlements by guardians ad litem. Any guardian ad litem who may institute any action in any of the courts of this State for the recovery of damages to the person or property of any minor or other person laboring under a disability to sue for himself may effect a settlement of such action *provided the settlement be approved by the* resident or presiding *judge* of the circuit in which is comprised the county in which the action is brought or by the judge of the county court in which the action is instituted. When any such guardian ad litem receives an offer of settlement which he deems acceptable and advantageous to the minor or other person whom he represents he shall present the court with a copy of the pleadings and accompany the same with a verified petition stating the reasons why, in his opinion, the settlement should be made. The court in which any such petition and pleadings are filed shall thereupon give consideration to the entire matter and authorize the guardian ad litem to consummate the settlement *only when in the discretion of the court such settlement is proper and to the best interest of the minor* or other person laboring under the disability. * * *." (Emphasis added.)

In this case Mrs. Jolley had not been appointed guardian ad litem for her infant son, at the time of the filing of the claim.

■ However, even had she filed the claim in an official capacity, I do not think the interests of the minor were properly protected. " 'The position of a guardian ad litem or next friend is one of trust and confidence toward the infant as well as the court; hence, it is his duty fully to protect the infant's interests in all matters relating to the litigation, as the infant might act for himself if he were of capacity to do so. His duty requires him to acquaint himself with all the rights of the infant in order to protect them, and to submit to the Court for its consideration and decision every question involving the rights of the infant affected by the suit. He should be as careful not to do anything, or allow anything to be done, to the prejudice of his ward's interest, as the court from which he receives his appointment. If in consequence of the culpable omission or neglect of the guardian ad litem the interests of the infant are sacrificed, the guardian may be punished for his neglect as well as made to respond to the infant for the

damage sustained. The misconduct of a guardian ad litem or next friend in protecting the infant's interest does not affect the jurisdiction of the court in rendering the judgment in the suit or action; the judgment is not rendered thereby void; it is merely a matter of error, for which a judgment may be set aside.'" Simpson v. Doggett, 159 S.C. 294, at pages 299, 300, 156 S.E. 771, at page 773.

■ "In the absence of bad faith the doctrine of waiver does not apply to an infant, nor can he consent to the violation of his rights, and his rights cannot be waived by persons not authorized by law to do so." 31 Corpus Juris, p. 1008. See also, 43 C.J.S. Infants § 26b.

■ At common law infants do not possess the power to exercise the same legal rights as adults. The disabilities of infants are really privileges, which the law gives them, and which they may exercise for their own benefit, the object of the law being to secure infants from damaging themselves or their property by their own improvident acts or prevent them from being imposed on by others. The rights of infants must be protected by the court, while adults must protect their own rights. Persons dealing with infants must take notice of their privileges and disabilities. Infancy is a shield for the protection of an infant. 43 C.J.S. Infants § 19, pp. 81, 82; Beam v. McBrayer et al., 132 S.C. 72, 128 S.E. 34.

Minority, and particularly minority to the extent of tender years, is in itself a recognized badge of incompetency of an infant to handle his own affairs. Hampton v. Ewert, 10 Cir., 22 F.2d 81, certiorari denied 276 U.S. 623, 48 S.Ct. 303, 72 L.Ed. 737.

"The guardian ad litem or next friend can make no concessions. He cannot waive or admit away any substantial rights of the infant, or consent to anything which may be prejudicial to him, even by neglect or omission; and any admission or waiver is ineffectual and not binding upon the infant, although contained in a pleading." 31 Corpus Juris, p. 1143, See, also, 43 C.J.S. Infants § 111d.

■ "An infant is incapable of making an admission which can affect his rights. Although admissions of an infant may be shown for what they are worth, nevertheless they are not binding on him, a fortiori, the admissions of another person cannot affect an infant's rights, nor can the admissions of infants bind other persons." 43 C.J.S. Infants § 22, p. 84.

"An infant is not capable of waiving his rights or of consenting to a violation thereof, nor can there be such a waiver or consent by a third person unless authorized by law." 43 C.J.S. Infants § 26b, p. 88.

For the foregoing reasons, I must conclude that no claim has been filed by or on behalf of the infant Ricky Dixon, legal or binding upon him to limit his recovery in this case.

The motion of the defendant should, therefore, be denied, and

It is, therefore, ordered, that the motion of the defendant be and the same is hereby denied.