NOTICE
Decision filed 07/09/18. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2018 IL App (5th) 160316

NO. 5-16-0316

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| ALEXIS NICHOLS, | ) | Appeal from the |
| f/k/a Alexis Brueggeman, | ) | Circuit Court of |
| | ) | Madison County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 13-L-1395 |
| | ) | |
| DAVID FAHRENKAMP and DAVID | ) | |
| FAHRENKAMP, d/b/a Fahrenkamp Law Offices, | ) | Honorable |
| | ) | Barbara L. Crowder, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court, with opinion.
JUSTICE CHAPMAN concurred in the judgment.
JUSTICE GOLDENHERSH dissented, with opinion.

**OPINION**

¶ 1    Plaintiff, Alexis Nichols, f/k/a Alexis Brueggeman, brought a legal malpractice action against defendants, David Fahrenkamp and David Fahrenkamp, d/b/a Fahrenkamp Law Offices, to recover damages occasioned by the negligence of defendants during the time attorney Fahrenkamp was acting as plaintiff's guardian *ad litem*. Plaintiff alleged that attorney Fahrenkamp's negligence caused the dissipation of settlement proceeds that had been recovered from a personal injury lawsuit brought on behalf of plaintiff when she was a minor. The circuit court of Madison County entered summary judgment for defendants, relying on the premise that a private attorney appointed as a guardian *ad litem* has quasi-judicial immunity for his or her omissions "so long as the guardian *ad litem* follows the directions of the court and is within the

1

scope of the appointment." We reverse the entry of summary judgment in favor of defendants and remand for further proceedings.

¶ 2    When plaintiff was 11 years old, she received a $600,000 settlement for injuries she sustained in a motor vehicle accident. Because plaintiff was a minor, her mother was appointed as guardian of plaintiff's person and estate. Attorney Fahrenkamp was appointed by the court as the guardian *ad litem* for plaintiff. In 2012, plaintiff brought suit against her mother, alleging that she spent funds from the settlement account that were not used for the benefit of plaintiff, but instead were used solely for her mother's benefit. According to the allegations in the 2012 litigation, plaintiff alleged that her mother petitioned the probate court and withdrew some $79,507 that was not used on plaintiff's behalf. This litigation, case number 12-MR-188, proceeded to trial in 2013.

¶ 3    On April 17, 2013, during trial, the judge asked, "And where was the GAL [guardian *ad litem*] in all of this?" (The guardian *ad litem*, attorney Fahrenkamp, had not been named as a party-defendant in 12-MR-188.) At the conclusion of the trial in 12-MR-188, the court entered an award for plaintiff, but limited the amount of the recovery. With regard to the amount of damages, the trial court determined that plaintiff's mother could not be faulted for her failure to have receipts to prove each and every amount she claimed to have spent for the items provided to her daughter. The court explained that it would not assess damages "while [Plaintiff] had a guardian *ad litem* who approved the estimates and expenditures." In other words, the court relied on attorney Fahrenkamp's status as guardian *ad litem* to limit plaintiff's remedies against her mother. As a result, judgment was entered against plaintiff's mother for $16,365, plus $10,000 in attorney fees and the return of a 2007 vehicle, far less than the amount plaintiff claimed had been dissipated.

2

¶ 4    On August 16, 2013, plaintiff filed suit against defendants, contending that they failed to protect her interests by allowing her mother to convert plaintiff's settlement funds for the mother's personal benefit. In her complaint against defendants, plaintiff alleged that attorney Fahrenkamp never met with or talked to plaintiff during any of the time he was acting as her guardian *ad litem*, nor did he ever ask her if the statements contained in her mother's petitions to withdraw monies from the settlement account were accurate. She averred that if Fahrenkamp had spoken with her, she would have told him that the expenses her mother claimed needed to be paid out of plaintiff's settlement account either did not exist, were grossly inflated, or were covered expenses that plaintiff, herself, was already paying for out of other proceeds. Plaintiff further stated that she had no idea she could ask attorney Fahrenkamp, or any other attorney, for advice regarding her mother's requests to withdraw funds from the settlement proceeds. Plaintiff claimed she did not even realize that she had a guardian *ad litem* appointed for her, let alone attorney Fahrenkamp, until after the probate file was closed on September 2, 2010, when she reached the age of 18. Plaintiff further asserted that information about her settlement monies, and the process by which such funds could be used on her behalf, were largely kept from her during her childhood. Finally, plaintiff also claimed that defendants negligently failed to audit the account or report any irregularities to the court or to the plaintiff.

¶ 5    Defendants filed a motion to dismiss, and then a motion for summary judgment, alleging that attorney Fahrenkamp, as a guardian *ad litem*, had quasi-judicial immunity for the functions he performed in the probate proceeding, given that he was acting within the scope of his appointment by the court. Attorney Fahrenkamp specifically averred that he met with plaintiff on three separate occasions during the time he acted as her guardian *ad litem*. He also stated that he gave plaintiff, who was then 11 years old, his business card when he was first appointed as her

guardian *ad litem*, and there was nothing that prevented her from contacting him through the numbers listed on the business card, if she had any questions or concerns.

¶ 6    On June 22, 2016, the court granted defendants' motion for summary judgment. The court, in ruling in favor of defendants, recognized that Illinois law had not yet answered the question of whether a guardian *ad litem* was subject to a grant of immunity under the circumstances presented by plaintiff's claims. The trial court recognized, however, that a guardian *ad litem*, appointed by the court in a probate proceeding, is under a duty to help safeguard and protect the interests and welfare of the minor. In drawing a distinction between immunity and duty, the court then explained, relying on *McCarthy v. Cain*, 301 Ill. 534, 134 N.E. 62 (1922), that a guardian *ad litem* should examine the case, determine what the rights are of his wards, what defense their interests demand, and then make such defense as the exercise of care and prudence would dictate. "The guardian *ad litem* who perfunctorily files an answer for his ward and then abandons the case fails to comprehend his duties as an officer of the court." (Internal quotation marks omitted.) *McCarthy*, 301 Ill. at 539.

¶ 7    Despite the trial court's recognition of the duty imposed upon a guardian *ad litem*, the court granted summary judgment in favor of the defendants, finding that the failure of the guardian *ad litem* to meet with plaintiff over the monies requested by mother did not "constitute a failure to fulfill the actions and duties that were assigned to defendant by the probate court." The court reasoned that so long as the guardian *ad litem* acted within the scope of his appointment to give advice to the court, he should enjoy the same immunity as the court. Because attorney Fahrenkamp's role was general, and his duty was to act in the ward's best interests by making recommendations to the court, the court concluded that Fahrenkamp had no duty to perform the specific tasks of verifying mother's requests, perform audits of the settlement

4

account, or act as an accountant to review receipts, unless specifically instructed by the court to do so.

¶ 8    In making its ruling, the court relied on *Heisterkamp v. Pacheco*, 2016 IL App (2d) 150229, 47 N.E.3d 1192. Although the facts of that case involved a court-appointed expert to perform a custody evaluation, the trial court adopted the *Heisterkamp* reasoning and determined that when a court-appointed individual acts within the scope of his or her appointment to give advice to the court regarding the best interest of the minor, for use in the court's decision-making process, that individual must be cloaked with the same immunity as the court. With regard to plaintiff's allegations that Fahrenkamp did not meet with her, the court recognized that the facts regarding this issue were in dispute. The court held, however, that this dispute was not a material fact that precluded summary judgment. Accordingly, the failure to meet with plaintiff over monetary requests did not constitute a failure to fulfill the actions and duties that were assigned to the guardian *ad litem* by the probate court. This meant, in essence, that plaintiff had little remedy for the dissipation and conversion of her assets. According to the trial court, the plaintiff's mother was shielded from liability for her alleged misconduct because plaintiff had a guardian *ad litem*, who approved the expenditures, and the guardian *ad litem* was immune from liability because the court order appointing him as guardian *ad litem* lacked any specificity regarding his duties.

¶ 9    We agree with plaintiff that the trial court erred in granting defendants quasi-judicial immunity because of the lack of specific directions in the order appointing attorney Fahrenkamp as guardian *ad litem*. Under the court's reasoning, the guardian *ad litem* had no independent duty to plaintiff, and the appointment of a guardian *ad litem* was nothing more than an empty gesture.

¶ 10                                    Analysis

¶ 11    The review of an order granting summary judgment is *de novo*. *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 280, 864 N.E.2d 227, 232 (2007) (opinion of Garman, J., joined by Fitzgerald and Karmeier, JJ.). Summary judgment should not be allowed unless the moving party's right to judgment is clear and free from doubt. If the undisputed material facts could lead reasonable observers to divergent inferences, or if there is a dispute as to a material fact, summary judgment should be denied and the issue should be decided by the trier of fact. *Wells v. Enloe*, 282 Ill. App. 3d 586, 589, 669 N.E.2d 368, 371 (1996). Only when the party seeking summary judgment demonstrates that his or her right to judgment is clear, free from doubt, and determinable solely as a matter of law should summary judgment be entered. *Taitt v. Robinson*, 266 Ill. App. 3d 130, 132, 639 N.E.2d 893, 895 (1994). Under the circumstances before us, the trial court erred in granting summary judgment to defendants. Fahrenkamp, as the guardian *ad litem*, was not entitled to quasi-judicial immunity or any immunity for that matter. Fahrenkamp was under a duty to serve the best interests of plaintiff, and the facts, if taken as true, created a material question of fact with regard to whether Fahrenkamp breached his duty to plaintiff.

¶ 12    This court has previously recognized that "[i]t is the public policy of this State that rights of minors be carefully guarded. No citation of authority need be given to state that one of the cardinal precepts of our law is that in any court proceeding involving minors their best interest and welfare is the primary concern of the court." *Layton v. Miller*, 25 Ill. App. 3d 834, 838, 322 N.E.2d 484, 487 (1975). Here, the probate court recognized that an 11-year-old child needed an attorney who would look out for her best interests and ensure that anyone who sought to use her settlement funds was doing so for the child's welfare. Therefore, a guardian *ad litem* was

6

appointed to protect plaintiff from anyone who could exploit her. Plaintiff claims she never met with attorney Fahrenkamp, or even knew that he had been appointed to represent her. Attorney Fahrenkamp claims he met with plaintiff three times over a period of six years, and gave the 11-year-old plaintiff his business card the first time they met. We find it incredulous that an 11-year-old would understand the significance of attorney Fahrenkamp being appointed as her guardian *ad litem*, or even understand that she could call numbers listed on a business card to get advice. In any event, contrary to the court's ruling, these issues represented material facts, and this factual dispute was not capable of being resolved by summary judgment. See *Ahle v. D. Chandler, Inc.*, 2012 IL App (5th) 100346, ¶ 13, 966 N.E.2d 1249 (trial court determines *whether* a question of fact exists when ruling on a motion for summary judgment; court does not decide a question of fact and cannot make credibility determinations or weigh evidence). These conflicting facts, despite their significance, are irrelevant if the guardian *ad litem* is immune from liability, as concluded by the trial court. In our view, such a finding ignores a decision of our supreme court in *Stunz v. Stunz*, 131 Ill. 210, 23 N.E. 407 (1890), wherein the court stated:

> "It is the duty of the guardian *ad litem*, when appointed, to examine into the case and determine what the rights of his wards are, and what defense their interest demands, and to make such defense as the exercise of care and prudence will dictate. He is not required to make a defense not warranted by law, but should exercise that care and judgment that reasonable and prudent men exercise, and submit to the court, for its determination, all questions that may arise, and take its advice, and act under its direction in the steps necessary to preserve and secure the rights of the minor defendants." *Stunz*, 131 Ill. at 221.

7

As the guardian *ad litem*, Farhrenkamp was obligated to protect and defend the interests of the minor plaintiff, regardless of whether the court order contained any specifics. In doing so, "[i]t was his duty to have understood the cause and the rights of the parties, and to have called [to] the attention of the court" any irregularities in the withdrawals of plaintiff's settlement proceeds. See *Stunz*, 131 Ill. at 221.

¶ 13    In deciding this case, we also acknowledge the reasoning set forth in *Dixon v. United States*, 197 F. Supp. 798 (W.D.S.C. 1961), as noted by the trial court in its order, even though based on South Carolina law. The tenets are equally applicable here, where the trial court described more fully the duties and obligations of a guardian *ad litem*:

"The position of a guardian ad litem or next friend is one of trust and confidence toward the infant as well as the court; hence, it is his duty fully to protect the infant's interests in all matters relating to the litigation, as the infant might act for himself if he were of capacity to do so. His duty requires him to acquaint himself with all the rights of the infant in order to protect them, and to submit to the Court for its consideration and decision every question involving the rights of the infant affected by the suit. He should be as careful not to do anything, or allow anything to be done, to the prejudice of his ward's interest, as the court from which he receives his appointment. If in consequence of the culpable omission or neglect of the guardian *ad litem* the interests of the infant are sacrificed, the guardian may be punished for his neglect as well as made to respond to the infant for the damage sustained." (Internal quotation marks omitted.) *Dixon*, 197 F. Supp. at 802-03.

¶ 14    In light of *Stunz*, and the foregoing, we hold that attorney Fahrenkamp, as guardian *ad litem* for the minor plaintiff, owed a duty to plaintiff to render advice and to protect plaintiff's

assets and interests arising out of the underlying personal injury settlement. He had a duty to act as an advocate on behalf of plaintiff. His failure to meet with or otherwise communicate with his ward, as plaintiff contends, did not comply with that duty owed plaintiff, as he was not fulfilling his role as plaintiff's advisor, advocate, negotiator, or evaluator. Contrary to the arguments made by plaintiff, there are no statutory or common law requirements that would have mandated that the guardian *ad litem* provide the court with an accounting. But there was certainly a common law duty that may have been breached, depending on the outcome of the factual disputes presented by the parties.

¶ 15    We also agree with plaintiff that attorney Fahrenkamp was not entitled to the protections of any form of immunity in his role as guardian *ad litem*. Giving any guardian *ad litem* absolute immunity under the circumstances presented here is contrary to the public policy of this state. Unlike the expert witness in *Heisterkamp*, Fahrenkamp was not simply a neutral party, appointed by the court to act as a professional expert. Fahrenkamp was a licensed attorney, an officer of the court, who should have understood the need to protect the assets of his ward. In his role as guardian *ad litem*, he was to advise the court, but only after making careful inquiry for the purpose of protecting the minor plaintiff's interests. In his role as advisor to the court, Fahrenkamp was not the mother's rubber-stamp, but instead the plaintiff's watchdog, authorized by the court to protect the minor's assets. And, if attorney Fahrenkamp was not supposed to question the mother's requests for funds she was withdrawing from plaintiff's settlement monies, we question what he was supposed to do, and what he got paid for during the six years he allegedly served as plaintiff's guardian *ad litem*. If the situation were as plaintiff claims, attorney Fahrenkamp did not advise plaintiff and seemingly did very little to verify that the substantial sums of money withdrawn from plaintiff's account were truly being used for the benefit of

9

plaintiff. Fahrenkamp's alleged omissions, if proven true, were not in plaintiff's best interests and, according to plaintiff, led to the dissipation of her settlement proceeds. Granting the guardian *ad litem* quasi-judicial immunity meant that plaintiff was not allowed to pursue any remedy for the guardian *ad litem*'s failure to exercise that degree of care and judgment that reasonable and prudent men exercise in these circumstances, to protect the assets of a minor.

¶ 16    The trial court concluded, and defendants argue, that they are entitled to the same protection afforded guardians *ad litem* appointed in dissolution of marriage and child custody proceedings. See 750 ILCS 5/506(a)(2), (a)(3) (West 2012). The rationale behind giving child representatives in dissolution cases absolute immunity is so that they can fulfill their obligations, without worry of harassment or intimidation from dissatisfied parents. *Vlastelica v. Brend*, 2011 IL App (1st) 102587, ¶ 23, 954 N.E.2d 874. Under the circumstances presented here, there is no reason for granting that kind of immunity. Rather, the situation here is more akin to a fiduciary relationship between a guardian and a ward as a matter of law. See *Apple v. Apple*, 407 Ill. 464, 469, 95 N.E.2d 334, 337 (1950). Such a relationship between a guardian and a ward is equivalent to the relationship between a trustee and a beneficiary. See *Parsons v. Estate of Wambaugh*, 110 Ill. App. 3d 374, 377, 442 N.E.2d 571, 572 (1982); see also *In re Estate of Swiecicki*, 106 Ill. 2d 111, 117-18, 477 N.E.2d 488, 490 (1985) (the fiduciary duties owed a beneficiary by a trustee and a ward by a guardian are similar). The guardian of a minor is a trustee of the minor's property for the minor's benefit and is chargeable as such; in other words, the guardian must be held to have dealt with the minor's property for the benefit of the minor. *In re Estate of Swiecicki*, 106 Ill. 2d at 119. Attorney Fahrenkamp clearly did not deal with plaintiff's property for her benefit, if plaintiff's allegations prove true.

¶ 17    In further support of our reasoning that a guardian *ad litem* has a duty, independent of merely acting as an arm of the court, we note that in *In re Estate of Finley*, 151 Ill. 2d 95, 601 N.E.2d 699 (1992), our supreme court allowed a guardian *ad litem* to file an appeal on behalf of a minor, even after the court had terminated the need for the guardian. *Finley* involved a wrongful death claim wherein the court ruled that minor siblings of the decedent were not entitled to any recovery for loss of society. The guardian *ad litem* for the minors objected to the settlement, wherein the minor siblings of the decedent were awarded no portion of the settlement proceeds for the loss of society of their brother. The trial court overruled the objections of the guardian *ad litem* and approved the settlement. In the same order, the court terminated the guardian *ad litem*'s representation of the minors. Two weeks after the trial court entered its order, the guardian *ad litem* filed an appeal on behalf of the minors. The first issue raised was whether the guardian *ad litem* had standing to bring the appeal. Our supreme court answered this question in the affirmative, finding that the trial court could not preclude the filing of an appeal on behalf of the minors simply by vacating the appointment of the guardian *ad litem*. The guardian *ad litem* was simply fulfilling his obligation to protect the best interests of his wards. *Finley*, 151 Ill. 2d at 100.

¶ 18    The dissent suggests that not granting immunity to a guardian *ad litem*, no matter the factual circumstances, will have a chilling effect on attorneys willing to serve as guardians *ad litem* in general. In support, the dissent refers primarily to those cases involving marital dissolution and child custody. First, we are not concluding that all guardians *ad litem* have no immunity. Again, we recognize that those guardians *ad litem* appointed to serve as "an arm of the court," as in custody situations, for instance, need immunity in order to best serve the needs of the court and any minors involved in such proceedings. Second, the threat of civil liability in

11

those instances where a guardian does not have immunity is no different than that faced by any attorney appearing in any other type of lawsuit and is consistent with the fiduciary obligation imposed upon any guardian in representing a ward under the Probate Act of 1975. See 755 ILCS 5/11-13(b), (d) (West 2012).

¶ 19    Having concluded that attorney Fahrenkamp, as guardian *ad litem*, did not have quasi-judicial immunity under the circumstances presented here, we also conclude that summary judgment should not have been entered. The evidence presented by plaintiff showed there were genuine issues of fact regarding whether defendant breached his duties to her. Accordingly, the trial court erred in granting summary judgment for the defendants. We therefore reverse the grant of summary judgment in favor of defendants and remand this cause to the circuit court of Madison County for further proceedings.

¶ 20    Reversed and remanded.


¶ 21    JUSTICE GOLDENHERSH, dissenting:

¶ 22    I respectfully dissent.

¶ 23    As noted in the majority opinion, while alluding to both qualified and absolute immunity of attorney Fahrenkamp, as plaintiff's guardian *ad litem*, the majority concludes that attorney Fahrenkamp is not entitled to either form of immunity. In my view, this runs contrary both to sound authority and is impractical in practice in our trial courts.

¶ 24    The trial judge, in her ruling adverse to plaintiff, found that there was no failure by attorney Fahrenkamp to fulfill the actions and duties directed by the probate court. Accordingly, attorney Fahrenkamp, in the trial court's opinion, acted within the scope of his appointment, including making recommendations to the court, and fulfilled the instructions of the court. The

12

trial court determined that although there was a dispute between plaintiff and defendants as to an alleged failure to meet, this was not a material fact that would preclude summary judgment in favor of defendants. The trial court determined that defendants are entitled to quasi-judicial immunity and relied substantially on *Heisterkamp* (*Heisterkamp v. Pacheco*, 2016 IL App (2d) 150229, ¶ 1 (absolute immunity before an expert)). In my view, the determination of the trial court was correct.

¶ 25    The majority's disposition denying any form of immunity, absolute or quasi-qualified, runs counter to sound authority and reads *Vlastelica v. Brend*, 2011 IL App (1st) 102587, too narrowly. The *Brend* court determined that the child representative and guardians *ad litem* were entitled to absolute immunity. Its sound reasoning, with which I agree, is as follows:

> "The Supreme Court has recognized that the common law provides for absolute immunity for judges (see *Briscoe v. LaHue*, 460 U.S. 325, 334-35 (1983)), and the Seventh Circuit Court of Appeals (hereinafter, the Seventh Circuit) has held that guardians *ad litem* and child representatives are entitled to the same absolute immunity because they are 'arms of the court.' *Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009). The *Cooney* court stated:
>
>> 'Guardians *ad litem* and court-appointed experts, including psychiatrists, are absolutely immune from liability for damages when they act at the court's direction. [Citations.] They are arms of the court, much like special masters, and deserve protection from harassment by disappointed litigants, just as judges do. Experts asked by the court to advise on what disposition will serve the best interests of a child in a custody proceeding need absolute immunity in order to be able to fulfill their obligations "without the worry of intimidation and harassment

from dissatisfied parents." [Citation.] This principle is applicable to a child's representative, who although bound to consult the child is not bound by the child's wishes but rather by the child's best interests, and is thus a neutral, much like a court-appointed expert witness.' *Cooney*, 583 F.3d at 970.

Plaintiffs here argue that as a federal court decision, *Cooney* is not binding on us (see *Werderman v. Liberty Ventures, LLC*, 368 Ill. App. 3d 78, 84 (2006)) and should not be followed unless its logic is persuasive. \*\*\*

Contrary to plaintiffs' arguments, we find *Cooney*'s logic persuasive." *Brend*, 2011 IL App (1st) 102587, ¶¶ 21-23.

¶ 26 This decision and its reasoning clarifies earlier supreme court authority. *Clarke v. Chicago Title & Trust Co.*, 393 Ill. 419, 66 N.E.2d 378 (1946) (which implied that some form of immunity was appropriate for persons in situations similar to that of defendants). In sum, existent authority and sound reasoning for the authority cited above indicates that some form of immunity is appropriate for defendants and the trial court appropriately so found.

¶ 27 Dispositions designated by this court as opinions have consequences, both jurisprudential and practical. In this case, the majority's opinion has adverse practical consequences. It imposes upon trial judges an obligation to provide specificity in directions to the guardian *ad litem*, which may or not be effective, may or may not cover the factual situation at issue, and may very likely be premature in the development of the litigation in which the guardian *ad litem* is acting, since the guardian *ad litem*'s appointment would likely be early in the litigation and prior to development of facts and issues. While this problem may be subject to remedy by appropriate and timely motions of the guardian *ad litem* or other parties, the more serious consequence is to the attorney who considers accepting a guardian *ad litem* appointment. The majority's opinion

imposes upon the guardian *ad litem* duties and requirements, not well defined, despite the finding of the trial court that this guardian *ad litem* fulfilled all of the conditions and instructions imposed upon him. In effect, the majority has set up that future guardians *ad litem* be blindsided by duties not specific or implied in the trial judge's appointment and subsequent orders, the effects of which are adverse. Will an experienced attorney who takes guardian *ad litem* appointments be willing to continue to do so if the attorney disagrees in their professional judgment with a request or a demand and accordingly be subject to litigation for exercising that professional judgment and discretion in their actions in representations to the court? Will a younger, less experienced attorney be willing to accept guardian *ad litem* appointments with such a nebulous or absent delineation of supposed duties and the consequent exposure to liability without either quasi or absolute immunity? Will the trial judge, who has determined that appointment of a guardian *ad litem* is required, be able to find a sufficient number of adequately qualified attorneys to take such appointments? Any of these consequences are adverse to the effective administration of justice in such an important area.

¶ 28    For the reasons stated above, I respectfully dissent from my colleagues' disposition.

2018 IL App (5th) 160316

NO. 5-16-0316

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| ALEXIS NICHOLS, f/k/a Alexis Brueggeman, | ) ) ) | Appeal from the Circuit Court of Madison County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) | No. 13-L-1395 |
| | ) | |
| DAVID FAHRENKAMP and DAVID FAHRENKAMP, d/b/a Fahrenkamp Law Offices, | ) ) ) | Honorable Barbara L. Crowder, |
| Defendants-Appellees. | ) | Judge, presiding. |

**Opinion Filed:** July 9, 2018

---

**Justices:** Honorable Judy L. Cates, J.

Honorable Melissa A. Chapman, J., concurred
Honorable Richard P. Goldenhersh, J. dissented

---

**Attorneys for Appellant** Charles W. Armbruster III, Michael T. Blotevogel, Roy C. Dripps III, Winterscheidt & Blotevogel, LLC, 51 Executive Plaza Court, Maryville, IL 62062

---

**Attorney for Appellees** M. Joseph Hill, 511 St. Louis Street, P.O. Box 647, Edwardsville, IL 62025