BRENDA WELLS, Adm'r of the Estate of Danny J. Wells, Deceased, Plaintiff-Appellant, v. DOUGLAS A. ENLOE *et al.*, Defendants-Appellees.

Fifth District    No. 5—95—0735

Opinion filed August 9, 1996.

Joseph L. Bauer, Jr., and Michael L. Nepple, both of Bauer & Baebler, of St. Louis, Missouri, and Paul A. Croegaert, Sr., of Croegaert, Clark & Hough, Ltd., of Olney, for appellant.

William F. Kopis and Joshua G. Vincent, both of Hinshaw & Culbertson, of Chicago, for appellees.

PRESIDING JUSTICE HOPKINS delivered the opinion of the court:

Plaintiff, Brenda Wells, as administrator of the estate of her deceased husband, Danny J. Wells, appeals from the Lawrence

County circuit court's entry of summary judgment in favor of defendants, Douglas A. Enloe and his law firm, Gosnell, Benecki, Borden and Enloe, Ltd. In her lawsuit against defendants, plaintiff alleges legal malpractice, claiming that Enloe incorrectly advised her regarding the applicable statute of limitations for her wrongful death lawsuit against Vincennes University.

■ On appeal, we consider whether plaintiff is barred from pursuing her malpractice suit by her application for and receipt of workers' compensation benefits from Vincennes University (University), the decedent's employer at the time of his death. Additionally, we construe the application of the exclusionary provision of section 11 of the Workers' Compensation Act, which provides as follows:

> "Accidental injuries incurred while participating in voluntary recreational programs including but not limited to athletic events, parties and picnics do not arise out of and in the course of the employment even though the employer pays some or all of the cost thereof. This exclusion shall not apply in the event that the injured employee was ordered or assigned by his employer to participate in the program." 820 ILCS 305/11 (West 1992).

For reasons we will fully explain, we reverse and remand. Before we summarize the relevant facts, however, we first set forth the standard for our review of the trial court's grant of summary judgment.

## I. STANDARD OF REVIEW

■ A motion for summary judgment is to be granted "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 1992).

> "The pleadings, depositions, admissions, and affidavits on file must be construed against the movant and in favor of the opponent of the motion, although the opponent cannot rely simply on his complaint or answer to raise an issue of fact when the movant has supplied facts which, if not contradicted, entitle him to a judgment as a matter of law. [Citation.] Summary judgment is a drastic means of disposing of litigation, so the right of the moving party to obtain summary judgment must be clear and free of doubt. [Citation.] Where doubt exists as to the right of summary judgment, the wiser judicial policy is to permit resolution of the dispute by a trial." *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240, 249 (1994).

In appeals from rulings on summary judgments, the reviewing court conducts a *de novo* review. *Jewish Hospital v. Boatmen's National Bank*, 261 Ill. App. 3d 750 (1994). If the reviewing court

590

determines that there is a genuine issue of material fact, then the summary judgment is to be overturned. *Thompson v. Platt*, 116 Ill. App. 3d 662 (1983). Based upon these rules, we summarize the facts presented to the trial court in the light most favorable to plaintiff, as the opponent of the motion for summary judgment.

## II. FACTS

On October 31, 1987, Danny J. Wells was killed in a plane crash at the Lawrenceville/Vincennes Airport in Lawrenceville, Illinois. Wells was a passenger in a plane piloted by James Jernigan. Both Wells and Jernigan were employed by Vincennes University's Department of Aviation Flight Technology as flight instructors. The plane crashed during an aerobatics demonstration, which was part of the University's "Dad's Day" weekend. As part of the Dads' Day weekend, the Alpha Eta Rho fraternity sponsored an event which was held at the Lawrenceville/Vincennes Airport. The event included a picnic lunch and flight competitions between the students. As was the custom for several years, the aerobatics demonstration took place during the event's lunch break. Wells and Jernigan were both killed when the plane crashed during the demonstration.

Plaintiff submitted her affidavit and other evidence in support of her opposition to defendants' motion for summary judgment. In her affidavit, plaintiff stated that her husband was "not required as part of his employment" to attend the event. Plaintiff further stated in her affidavit:

> "Danny was only there as a spectator, and was not even going to attend the event until requested to do so by a friend. *** Danny was never instructed or required to be present at this event as part of his employment. He voluntarily attended the event with me and the children as part of a family outing at a social event put on by the Alpha Eta Rho Fraternity. The family purchased a picnic lunch and planned to watch the aerobatics show as part of the picnic. Danny received no compensation for attending the 'Dad's Day' weekend party."

Plaintiff's deposition testimony essentially corroborated her affidavit.

Plaintiff also submitted the affidavit of David Frazier, the chief flight instructor for the University from 1980 until 1986 and a faculty member of the University's aviation department from August 1969 until May 1988. In his affidavit, Frazier stated, in relevant part, as follows:

> "3. That on October 31, 1987 Alpha Eta Rho Fraternity at Vincennes University sponsored a competition at Lawrenceville-Vincennes Airport near Lawrenceville, Illinois and had in prior years conducted a similar social program for fraternity members

and their families who had enrolled in the Vincennes University School of Aviation.

***

5. That the flight competition was considered by the students and faculty as a social event and picnic and was attended by the fraternity members, their families and friends, and occasionally by instructors in the School of Aviation, their families and friends.

***

***

7. That attendance at the *** flight competition was a voluntary act on the part of the faculty members of the Vincennes University flight training program and instructors were not required, were not requested, nor was it ever inferred or suggested by Don Marquez or any official of the university that the instructors attend this fraternity function on October 31, 1987 or any other date.

***

9. That no instructor took part in the competition between fraternity members and the activity was not part of the flight training or course of study. *** The competition involved only fraternity members and did not include numerous students in flight training.

10. That in previous years *** Don Marquez *** had put on an aerobatic exhibition during the lunch hour which was not authorized by Vincennes University but was performed by Marquez of his own volition.

***

12. That during his employment at Vincennes University no flight instructor was ever required to perform an aerobatic demonstration. That the performance of aerobatic exhibitions was not a condition or requirement of employment by Vincennes University."

In support of their motion for summary judgment, defendants submitted the deposition of Donald Marquez, the chairman of the University's aviation flight technology program and Wells' direct supervisor. Marquez testified that not every instructor was required to attend the flight competition event, but that most instructors, such as Wells and Jernigan, usually attended anyway. The instructors who were present and helping with the flight competitions did so as a part of their jobs. However, Marquez could not remember Wells' assignment that weekend, and he was not aware of any documentation to show if Wells had been assigned to judge the competition or perform any other official function at the event. Marquez did not instruct or order Wells to be present at the event but assumed that Jernigan, who was more directly involved in planning the event, had

ordered Wells to attend. Marquez admitted, however, that he did not know whether or not Jernigan ordered Wells to attend the event. Marquez had no idea why Wells went up in the plane that day, but he stated that Wells' participation as a passenger would have been voluntary on his part.

In her legal malpractice complaint against defendants, plaintiff alleged that she met with Douglas Enloe, of the defendant law firm, shortly after her husband's death, once in November 1987 and again in December 1987, "for the purpose of seeking and obtaining legal advice concerning all of the legal ramifications and effects of the death of" decedent. Plaintiff further alleged in her complaint that Enloe advised plaintiff that "there would indeed be a possible lawsuit for the wrongful death" of decedent and that plaintiff had two years within which to file her lawsuit against Jernigan and the University. Plaintiff alleged that Enloe failed to advise her that she was required to notify the University of her claim within 90 days after her husband's death and that she was required to file her lawsuit within one year of his death. Finally, plaintiff alleged that she relied upon Enloe's advice, and she further alleged, "As a direct and proximate result of defendants' failure to properly advise plaintiff of the applicable statute of limitations and notice provisions governing the wrongful death action for the death of Danny J. Wells, deceased, plaintiff has lost the right to recover damages as a result of the death of [decedent] and has been damaged greatly."

On October 27, 1989, within two years after her husband's death, plaintiff, now represented by another attorney, filed a six-count wrongful death complaint against the University, Jernigan's estate, and other defendants, in the United States District Court for the Southern District of Illinois. The district court case was eventually dismissed with prejudice as to all defendants, on the ground that plaintiff failed to file her complaint within one year of the death of her husband. The district court ruled as a matter of law that Jernigan was acting within the course and scope of his employment at the time of the accident, but that there were "several factual distinctions which would preclude summary judgment on this issue with respect to Wells." The court further stated: "[P]erhaps most importantly, the evidence is unclear as to whether Wells' services were required for the demonstration or whether he had gone along for his own enjoyment or other self-motivated purposes." *Wells v. Foncannon*, No. 89—4265 (S.D. Ill. January 29, 1992) (memorandum and order).

On February 14, 1990, before the final order in the district court case, plaintiff filed her original malpractice complaint in the Lawrence County circuit court against Enloe and his law firm. However, the complaint was dismissed without prejudice as premature.

On December 29, 1992, the court of appeals affirmed the district court's opinion. *Wells v. Vincennes University*, 982 F.2d 1147 (7th Cir. 1992). Specifically, the court of appeals held that Jernigan was acting within the course and scope of his employment at the time of the accident, but the court did not address the alternative argument made by Jernigan's estate, that plaintiff was bound by the exclusive remedy of the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 1992)).

On June 7, 1993, plaintiff refiled her malpractice complaint against defendants, alleging that defendants incorrectly advised plaintiff of the applicable time restraints for filing her wrongful death action against the University and Jernigan's estate. On July 18, 1994, defendants filed a motion for summary judgment, alleging that plaintiff "has been and is presently receiving and accepting periodic" workers' compensation payments pursuant to an arbitrator's award. Defendants attached a copy of the arbitrator's decision, entered on November 1, 1993, wherein the arbitrator determined that on the date of his death, Wells "sustained accidental injuries which arose out of and in the course of" his employment with Vincennes University. In their motion for summary judgment, defendants essentially argued that plaintiff was barred from any civil action against the University or Jernigan's estate as a result of her election of the remedy of workers' compensation, which is the exclusive remedy for an employee who is injured or killed in the course and scope of his employment. Defendants' argument is that without any civil action against the University and Jernigan's estate, plaintiff cannot prove that she has any damages occurring as the proximate result of defendants' negligence.

The trial court granted defendants' motion for summary judgment, finding that there was no dispute of fact that plaintiff, as administrator for her husband's estate, negotiated and received payments from the University "starting almost immediately after the accident and continuing up to the present time." The trial court found that even though the Workers' Compensation Act is the exclusive remedy for employees against their employers and coemployees, plaintiff had not waived her right to pursue her tort remedy, since she specifically negotiated with the University's compensation insurance carrier to preserve her right to the tort remedy in an agreement dated October 2, 1989, prior to the time she filed her tort action in the district court, and because she reserved "the right to file the tort suit and [provided] for adjustments in the event the alternative tort remedy was successful."

The trial court found that the parties' real dispute was the issue

of whether plaintiff's tort claim was barred "as a matter of fact because Danny Wells was acting in the course of and in the scope of his employment." In granting the defendants' motion for summary judgment, the court found that there was "no question of fact that Danny Wells was an instructor and salaried employee of Vincennes University and that his participation in the Dads' Day event was in the course of and within the scope of his employment." However, the court did see an issue as to "whether or not his presence in the plane for the aerobatic demonstration was voluntary or part of his employment."

The trial court ruled plaintiff's affidavit and deposition testimony inadmissible under the Dead-Man's Act. 735 ILCS 5/8—201 (West 1992). Additionally, the court apparently gave little credence to David Frazier's affidavit. The order points out that Frazier was chief flight instructor only until 1986, two years before the accident. The order does not acknowledge that Frazier was employed as a faculty member of the aviation department until May 1988, seven months after the accident. The court found that Frazier's testimony consisted mainly of conclusions and was void of any "new or additional evidentiary facts *** on which to base or support his conclusions."

The additional relevant portions of the court's order are as follows:

"Danny Wells participated in [the aviation department events] as an employee and although he may have enjoyed the day and his work, he was not there for the purpose of recreational activity. He agreed to go on the flight and appeared to be willing to do so and *there is no question that his presence was a voluntary act on his part but that does not mean it was not necessary for an instructor to be in the 'second seat' on the plane.* It is significant that laymen or others were not permitted by the department chairman to be in the plane for the aerobatic demonstration and that Danny Wells was permitted to be there as a trained instructor and *presumably* for the purpose of a backup or co-pilot in the event needed during the flight. There is no evidence to contradict the supervisor's testimony as to the nature and purpose of Danny Wells' participation in the flight. In the absence of any contradictory evidence, there is no question that Danny Wells was participating in the flight within the scope of and in the course of his employment." (Emphasis added.)

Based upon its determination that Wells was acting within the course and scope of his employment at the time of his death, the trial court held that plaintiff could not prove that "but for the alleged advice given by the defendants, the plaintiff would have recovered in the tort action."

Plaintiff appeals from the trial court's entry of summary judgment in favor of defendants. We find that the trial court abused its discretion in ruling plaintiff's testimony inadmissible, and we reverse on the basis that there is a genuine issue of material fact as to whether Wells was "participating in [a] voluntary recreational program[ ]" (820 ILCS 305/11 (West 1992)) at the time of his death.

## III. ANALYSIS

Plaintiff argues that she presented sufficient evidence to show that Wells was not acting within the course and scope of his employment at the time of his death, but that his participation was a purely voluntary recreational activity and that the Workers' Compensation Act did not bar her tort remedy. Plaintiff contends that the court improperly entered summary judgment because there is a genuine issue of material fact as to whether plaintiff was damaged as a proximate result of defendants' negligent advice. We agree with plaintiff's arguments.

## A. DEAD-MAN'S ACT

■ We first consider the trial court's ruling on the admissibility of plaintiff's deposition testimony and affidavit. We find that the trial court incorrectly ruled this evidence inadmissible under the Dead-Man's Act, which provides, in relevant part, as follows:

"In the trial of any action in which any party sues or defends as the representative of a deceased person ***, no adverse party or person directly interested in the action shall be allowed to testify on his or her own behalf to any conversation with the deceased [person] *** or to any event which took place in the presence of the deceased person ***, except in the following instances:

(a) If any person testifies on behalf of the representative to any conversation with the deceased *** or to any event which took place in the presence of the deceased ***, any adverse party or interested person, if otherwise competent, may testify concerning the same conversation or event." 735 ILCS 5/8—201 (West 1992).

■ The purpose of the Dead-Man's Act is to protect decedents' estates from fraudulent claims against the estate. *In re Estate of Kline*, 245 Ill. App. 3d 413, 429 (1993). In the case at bar, the trial court improperly used the Dead-Man's Act to bar plaintiff's testimony concerning conversations with her husband and events in his presence. The Dead-Man's Act is not to be used to bar representatives of the estate from introducing testimony that serves to protect claims of the estate. See *Fleming v. Fleming*, 85 Ill. App. 3d 532, 538 (1980).

■ In the case at bar, plaintiff sought to introduce her testimony and affidavit in opposition to defendants' motion for summary judg-

ment on her claim, as representative of her husband's estate, for legal malpractice. The privilege of invoking the Dead-Man's Act belonged to plaintiff to assert or waive. *Yetton v. Henderson,* 190 Ill. App. 3d 973 (1989). Plaintiff chose to waive the privilege. We reverse the trial court on this issue, as we find that this error substantially prejudiced plaintiff and clearly influenced the trial court in its decision to grant defendants' motion for summary judgment. *Kline,* 245 Ill. App. 3d at 429.

## B. VOLUNTARY RECREATIONAL ACTIVITY: THE SECTION 11 EXEMPTION

■ Based upon our review of the evidence, taken in the light most favorable to plaintiff, and including plaintiff's testimony and affidavit, we hold that plaintiff presented sufficient evidence to preclude summary judgment in defendants' favor. We also include in our review the affidavit of David Frazier, which was submitted by plaintiff. Contrary to the trial court's finding, we find that Frazier's affidavit does not consist of conclusions but of facts admissible in evidence. See 145 Ill. 2d R. 191. As such, the trial court should have considered the evidence in Frazier's affidavit.

There is ample evidence from which to find a genuine issue of material fact as to whether section 11 applies, in other words, whether Wells was accidentally injured while participating in a voluntary recreational activity. There is clear evidence to suggest that Wells was not required to attend the Dads' Day event at the airport as part of his job and that he voluntarily chose to ride as a passenger in the airplane as a recreational activity, rather than because he was ordered to do so by his employer. These facts are sufficient to raise the issue of the applicability of section 11 (*Chicago Transit Authority v. Industrial Comm'n,* 238 Ill. App. 3d 224 (1992); *Kozak v. Industrial Comm'n,* 219 Ill. App. 3d 629 (1991)) and to preclude summary judgment in favor of defendants.

## C. ELECTION OF WORKERS' COMPENSATION REMEDY

■ We now address defendants' argument that any common law action plaintiff possessed against her deceased husband's employer was extinguished when she elected a remedy under the Workers' Compensation Act. Our supreme court has clearly ruled that an injured employee who applies for and accepts workers' compensation benefits, whether through a settlement or an award, cannot thereafter also recover civil damages from the employer for the same injury. Where an injured employee collects benefits on the basis that his injuries are compensable under the Workers' Compensation Act, that employee cannot thereafter properly allege that those same injuries

fall outside the provisions of the Workers' Compensation Act. *Collier v. Wagner Castings Co.*, 81 Ill. 2d 229, 241 (1980). The rationale behind the rule is to prevent double recovery and the proliferation of litigation. *Collier*, 81 Ill. 2d at 241.

However, there is nothing to prevent the cautious employee from filing a common law action at the same time the claim for workers' compensation benefits is pending. *Rhodes v. Industrial Comm'n*, 92 Ill. 2d 467, 471 (1982). Nevertheless, if the employee receives payment from the employer for those injuries, whether through settlement, judgment, or award and whether in the common law action or in the workers' compensation action, he is thereafter precluded from also receiving an award from the employer for the same injury in the alternative forum. *Rhodes*, 92 Ill. 2d at 471; *Collier*, 81 Ill. 2d at 241-42. The exclusivity rule, which bars double recoveries, applies not only to the employee, but also to "any one wholly or partially dependent upon him, the legal representatives of his estate, or any one otherwise entitled to recover damages for such injury." 820 ILCS 305/5(a) (West 1992); *Fregeau v. Gillespie*, 96 Ill. 2d 479, 486 (1983).

■ It is equally clear, however, that the voluntary acceptance of workers' compensation payments, without any affirmative act to seek those benefits, does not necessarily operate to bar the recovery of civil damages against the employer or coemployee. *Copass v. Illinois Power Co.*, 211 Ill. App. 3d 205 (1991). Moreover: "[T]he exclusive remedy provisions of the Act do not bar employees from pursuing a common law action against co-employees for injuries arising out of intentional torts. The co-employee should not be permitted to assert that the plaintiff's injuries were accidental and therefore barred under the exclusivity provisions of the Act, when he himself committed the intentional tort." *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 472 (1990).

Although the question of the exclusivity of the Workers' Compensation Act has been raised many times in various factual settings, we have not found any case that deals with the particular facts at issue herein. We believe that the precise issue involved in the case at bar presents a question of first impression: whether an employee's estate is barred from suing an attorney for improper advice that results in the loss of a common law cause of action for the wrongful death of the employee if the estate applies for and accepts workers' compensation benefits after the common law action is dismissed due to the attorney's negligent advice. Based upon precedent, common sense, logic, and equity, we believe not.

■ Central to our determination is the rationale behind the exclusivity rule. Preventing Wells' estate from suing the attorney

whose advice allegedly resulted in the loss of the estate's wrongful death action does not further the goals of the exclusivity rule, the prevention of double recoveries against employers and the proliferation of litigation. Obviously, the recovery in this case, if any is had, will be against the attorney who gave the improper advice and his law firm. The employer will not be forced to pay for a civil judgment as well as workers' compensation benefits. Additionally, if we were to allow the defendants in this case to assert the exclusivity of the Workers' Compensation Act to bar plaintiff's lawsuit against them, our decision would operate to deprive plaintiff of any remedy for defendants' alleged professional negligence, a result which is inequitable and the opposite of the proliferation of litigation.

Defendants argue that plaintiff is judicially estopped from claiming that her husband's injuries did not arise out of and in the course of his employment, since she has now successfully asserted the contrary before the Industrial Commission. Defendants contend that the plaintiff cannot prove that she lost her underlying cause of action, the common law wrongful death case, due to defendants' negligence, since she is precluded from obtaining a civil judgment against the employer now that she has been awarded workers' compensation benefits for her husband's death.

Defendants' argument fails. The timing of the facts of this case are essential. Plaintiff did not apply for workers' compensation benefits until after the district court decided that plaintiff's lawsuit against decedent's employer was barred for failure to comply with the applicable statute of limitations. Until that time, plaintiff was merely accepting payments made voluntarily by the University. As plaintiff argues, she cannot be said to have made an election when there was no election to make, because the doctrine of election of remedies "presupposes a choice between two or more existing inconsistent remedies." *Geist v. Lehmann*, 19 Ill. App. 3d 557, 563 (1974).

Moreover, defendants' argument is an attempt to take advantage of an affirmative defense that belongs solely to the University. The Workers' Compensation Act provides an *employer* with a defense against a tort action asserted against the employer, but that defense is an affirmative one whose elements, the employment relationship and the nexus between the employment and the injury, must be established by the employer and is waived by the employer if not asserted in the trial court. *Doyle v. Rhodes*, 101 Ill. 2d 1, 10 (1984). In the instant case, assuming plaintiff's contentions are accurate, it would be highly inequitable and contrary to law to allow these defendants, who allegedly deprived plaintiff of her common law tort action, to evade liability by asserting that plaintiff has elected a remedy that she has been forced into by defendants' own negligence.

In order to prove her claim of legal malpractice, plaintiff must prove the existence of an attorney/client relationship, a duty, a breach, and that the attorney's negligence was the proximate cause of plaintiff's damages. *Brooks v. Brennan*, 255 Ill. App. 3d 260, 267 (1994). The essence of plaintiff's legal malpractice lawsuit is that *but for* the defendants-attorneys' negligence, plaintiff would have been successful in prosecuting her cause of action against the University and Jernigan's estate. *Brooks*, 255 Ill. App. 3d at 267. The district court's decision, which was affirmed by the court of appeals, provides plaintiff with the elements of proximate cause and damages in her lawsuit against these defendants. If not for Enloe's alleged improper advice, plaintiff would have known that she must give the University notice of her civil claim shortly after her husband's death, and she would have known that she was required to file her lawsuit within one year of his death. Plaintiff has alleged in her complaint against defendants that she relied upon Enloe's incorrect advice in failing to file her civil lawsuit against the University and Jernigan's estate until after the statute of limitations on that action had already run. We hold that plaintiff has established through competent evidence a genuine issue of material fact that, but for the negligence of defendants, she would have been successful in the prosecution of her cause of action against the University and Jernigan's estate. As a result, we reject defendants' argument that summary judgment was properly entered in their favor on that basis.

## IV. CONCLUSION

For all of the reasons stated, we reverse the trial court's entry of summary judgment in favor of defendants, and we remand this case back to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.

CHAPMAN and MAAG, JJ., concur.