SUSAN MECK, Indiv. and on Behalf of the Estate of Roy Meck, Deceased, Plaintiff-Appellant, v. PARAMEDIC SERVICES OF ILLINOIS *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—97—0275

Opinion filed May 26, 1998.—Rehearing denied June 23, 1998.

722

David Lockard & Associates (Charles P. Hehmeyer, of counsel), and Schiff, Hardin & Waite (Paula J. Morency, of counsel), both of Chicago, for appellant.

Cassiday, Schade & Gloor, of Chicago (Michael J. Morrissey, Catherine L. Garvey, Jennifer A. Keller, and Carolyn Quinn, of counsel), for appellee Paramedic Services of Illinois.

Russell W. Hartigan & Associates, of Chicago (Russell W. Hartigan and James P. Newman, of counsel), for appellee City of Berwyn.

JUSTICE O'MARA FROSSARD delivered the opinion of the court: The issue on appeal is whether the trial court, in granting summary judgment in favor of the defendants, correctly rejected application of the lost chance doctrine. Under the lost chance doctrine, proximate causation exists if plaintiff can show to a reasonable degree of medical certainty that defendant's conduct proximately increased the risk of harm or lost chance of recovery. *Holton v. Memorial Hospital*, 176 Ill. 2d 95, 119, 679 N.E.2d 1202 (1997).

Defendants prevailed on mirror motions for summary judgment. The only argument raised by each defendant was that plaintiff could not prove proximate causation as a matter of law because Roy Meck had less than a 50% chance of surviving his heart attack absent the alleged misconduct of the defendants.

Plaintiffs contend that summary judgment must be reversed because, after the judgment in defendants' favor, the Illinois Supreme Court in *Holton v. Memorial Hospital* reconciled the traditional concept of proximate causation with the lost chance doctrine and held that the lost chance doctrine does not lower plaintiff's burden of proving causation. *Holton*, 176 Ill. 2d at 119.

The *Holton* case reviewed application of the lost chance doctrine in the context of a request by defendant to reverse the judgment entered upon the jury's verdict alleging that the plaintiffs failed to establish that the conduct of the defendant proximately caused plaintiff's injuries. Although unlike *Holton*, in this case we review application of the lost chance doctrine in the context of a summary judgment motion, we find *Holton* instructive.

■ The lost chance doctrine as applied in *Holton* recognizes that proximate causation in a medical malpractice case exists if plaintiff can show that defendant's malpractice, to a reasonable degree of medical certainty, proximately caused the increased risk of harm or lost chance of recovery to the injured party. *Holton*, 176 Ill. 2d at 119.

Applying the reasoning of the *Holton* case, we find there is a genuine issue of material fact as to whether defendants' alleged willful

and wanton conduct proximately caused the death of Mr. Meck. We believe this issue raises questions that should be resolved by the trier of fact. We hold that to sustain the burden of proving proximate cause, a plaintiff is not required to establish that the decedent had a greater than 50% chance of survival absent the defendant's alleged misconduct. We emphasize this application of the lost chance doctrine does not relax or lower plaintiff's burden of proving causation.

For the reasons that follow, we find that the trial court erred in granting defendants' motions for summary judgment and we reverse and remand for further action consistent with this opinion.

I. FACTS

On the morning of March 14, 1993, Roy Meck, age 36, suffered cardiac arrest in his home in Berwyn. Mrs. Meck immediately telephoned for help from her neighbors, Maureen and Paul Gardner. Mrs. Gardner is a registered, intensive-care unit (ICU) nurse at Mac-Neal Hospital and is certified in advanced cardiac life support (ACLS). Mr. Gardner is a Berwyn firefighter who is certified in cardiopulmonary resuscitation (CPR). Mr. and Mrs. Gardner rushed to the Meck home to find Mr. Meck lying on the floor in the kitchen. Mr. Gardner called 9-1-1.

Mr. Meck's face was blue, he had no pulse, no chest movement, no sign of breathing and his mouth was full of vomit. The Gardners cleared the vomit from Mr. Meck's mouth and began CPR within approximately one minute of the cardiac arrest. They checked twice for a pulse, but at no point from the time they started CPR until defendants arrived 12 or 13 minutes later did they detect a pulse or independent ventilations.

The City of Berwyn had three ambulances on March 14, 1993. Unit 95 and Unit 96 were advanced life support vehicles, each of which was staffed by two paramedics employed by Paramedic Services of Illinois (PSI). Unit 97 was a basic life support vehicle and was staffed by emergency medical technicians (EMTs) employed by the City of Berwyn.

Berwyn EMT Unit 97 and PSI Unit 95 arrived minutes after receiving Mr. Gardner's call. The Berwyn EMTs arrived first. PSI paramedics arrived 28 seconds later.

The EMTs found Mr. Meck lying on the kitchen floor of his home. When they arrived, the Gardners were already administering CPR to decedent. Defendants state that at this time Mr. Meck was in cardiac arrest, unconscious and "unresponsive." He had no pulse, no blood pressure and was not breathing. His pupils were dilated and his skin was blue in color. The paramedics estimated that Mr. Meck's

"downtime" had already been 5 to 10 minutes by the time they arrived.

The PSI paramedics stated they defibrillated Roy Meck within seven minutes of his collapse, intubated him and were able to establish a pulse and blood pressure. PSI transported him to MacNeal Hospital with a normal pulse and normal sinus rhythm. However, although Mr. Meck's heart was resuscitated and he was delivered to the hospital alive and with a normal pulse, by the time he arrived at MacNeal he had suffered severe neurological damage. Mr. Meck began to have seizures and died four days later.

Plaintiff's fourth amended complaint contains six counts, all of which allege willful and wanton misconduct on the part of defendants. Count I alleges willful and wanton misconduct of PSI under the Wrongful Death Act (740 ILCS 180/1 *et seq.* (West 1996)). Count II alleges willful and wanton conduct on the part of PSI under the Survival Act (755 ILCS 5/27—6 (West 1996)). Count III alleges willful and wanton conduct on the part of PSI under the Rights of Married Persons Act (Family Expense Act) (750 ILCS 65/15 (West 1996)). Count IV alleges willful and wanton misconduct of the City of Berwyn under the Wrongful Death Act. Count V alleges willful and wanton misconduct on the part of the City of Berwyn under the Survival Act. Count VI alleges willful and wanton misconduct of the City of Berwyn under the Family Expense Act.

Plaintiff argues that the paramedics and EMTs violated their respective standards of care by, *inter alia*, willfully and wantonly engaging in the following misconduct or actions inconsistent with their training: (1) failing to provide oxygen; (2) failing to use an appropriate stretcher; (3) failing to use suction; (4) failing to provide basic CPR; (5) defibrillating Mr. Meck only once before intubation; (6) failing to administer enough Epinephrine; and (7) failing to perform CPR with two hands.

Defendants PSI and the City of Berwyn filed mirror motions for summary judgment on the issue of proximate cause. Both defendants claimed that plaintiff could not prove proximate cause as a matter of law because Mr. Meck, having collapsed from cardiac arrest at home, did not have a greater than 50% chance of survival absent the alleged misconduct of defendants.

On September 10, 1996, the trial court granted defendants' motions for summary judgment without opinion. On December 13, 1996, the trial court denied plaintiff's motion for reconsideration without opinion. Plaintiff appeals from both orders.

## II. STANDARD OF REVIEW

■ A motion for summary judgment is to be granted "if the plead-

ings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 1996). A court must construe the evidence against the movant and liberally in favor of the opponent of the motion. *Wells v. Enloe*, 282 Ill. App. 3d 586, 589, 669 N.E.2d 368 (1996). Summary judgment is a drastic means of disposing of litigation, so the right of the moving party to obtain summary judgment must be clear and free of doubt. *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240, 249, 633 N.E.2d 627 (1994). Where doubt exists, the wiser judicial policy is to permit resolution of the dispute by a trial. *Jackson Jordan, Inc.*, 158 Ill. 2d at 249.

In appeals from an order granting summary judgment, a reviewing court examines the record *de novo*. *Jewish Hospital v. Boatmen's National Bank*, 261 Ill. App. 3d 750, 755, 633 N.E.2d 1267 (1994). If the reviewing court determines that there is a genuine issue of material fact, then the summary judgment is to be overturned. *Wells*, 282 Ill. App. 3d at 589.

## III. ANALYSIS

■ As a preliminary matter, we note that the Illinois Emergency Medical Services (EMS) Systems Act (Act) protects paramedics and emergency medical technicians from claims of mere negligence. 210 ILCS 50/3.150 (West 1996). However, the Act specifically authorizes suits for willful and wanton misconduct and acts or omissions inconsistent with the person's training. The Act in effect during the 1993 events involved in this case provided, in relevant part, as follows:

"(a) Any person, agency or governmental body licensed or authorized pursuant to this Act or its rules, who in good faith provides life support services *** in an emergency shall not be civilly or criminally liable as a result of their acts or omissions in providing those services unless the acts or omissions *** are inconsistent with the person's training or constitute willful or wanton misconduct." 210 ILCS 50/17 (West 1992).

The record reflects that the parties agree the Act applies to the case at hand. As such, this is an action for willful and wanton misconduct rather than ordinary negligence. An act is willful or wanton if it is intentional or if it is committed under circumstances exhibiting a reckless disregard for the safety of others. *Affatato v. Jewel Cos.*, 259 Ill. App. 3d 787, 632 N.E.2d 137 (1994).

The issue on appeal is whether summary judgment was properly granted on the sole basis argued by each defendant that plaintiff could not prove proximate causation as a matter of law because the

decedent had a 50% chance or less of surviving his heart attack absent the alleged misconduct of the defendant. Defendants contend the trial court properly granted summary judgment because plaintiff had not established it was "more probably true than not" that the defendants' negligence was a proximate cause of Mr. Meck's injury.

■ Plaintiff contends that the trial court erred in its determination that summary judgment is appropriate unless a plaintiff can prove that he or she had greater than a 50% chance of survival absent the defendants' misconduct. Plaintiff's argument in the trial court followed the line of cases that adopt the loss of chance or lost chance doctrine. As applied to a medical malpractice action, the lost chance doctrine refers to the injury sustained by a plaintiff whose medical providers are alleged to have negligently deprived the plaintiff of a chance to survive or recover from a health problem, or where the malpractice has lessened the effectiveness of treatment or increased the risk of an unfavorable outcome to the plaintiff. *Holton*, 176 Ill. 2d at 119.

The lost chance doctrine is based on the standard articulated in the Restatement (Second) of Torts, section 323 (1965):

> "One who undertakes *** to render services to another which he should recognize as necessary for the protection of the other's person *** is subject to liability to the other for physical harm from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm." Restatement (Second) of Torts § 323 (1965).

The first case in Illinois to discuss proximate causation in the context of the lost chance doctrine and apply this Restatement section was *Northern Trust Co. v. Louis A. Weiss Memorial Hospital*, 143 Ill. App. 3d 479, 487, 493 N.E.2d 6 (1986):

> " 'Evidence which shows to a reasonable certainty that negligent delay in diagnosis or treatment *** lessened the effectiveness of treatment is sufficient to establish proximate cause.' " *Northern Trust Co.*, 143 Ill. App. 3d at 487-88, quoting *James v. United States*, 483 F. Supp. 581, 585 (N.D. Cal. 1980).

Under the lost chance doctrine, a plaintiff may seek damages resulting from a health care provider's negligent treatment even though the patient's chance of recovering from the existing illness or injury may be less than 50%. *Chambers v. Rush-Presbyterian-St. Luke's Medical Center*, 155 Ill. App. 3d 458, 463-65, 508 N.E.2d 426 (1987). "[O]nce it has been shown that a defendant's negligence increased the risk of harm to plaintiff, and that the harm was actually sustained, it then becomes a jury question as to whether the

increased risk was a substantial factor in producing the harm." *Chambers*, 155 Ill. App. 3d at 464.

More recently, in *Hajian v. Holy Family Hospital*, 273 Ill. App. 3d 932, 652 N.E.2d 1132 (1995), the court noted its support for the lost chance doctrine as articulated in *Pumala v. Sipos*, 163 Ill. App. 3d 1093, 517 N.E.2d 295 (1987), which held a plaintiff's evidence must show, to a reasonable degree of medical certainty that the negligent delay in diagnosis or treatment lessened the effectiveness of the treatment in order to establish proximate cause. *Hajian*, 273 Ill. App. 3d at 939. See also *Galvin v. Olysav*, 212 Ill. App. 3d 399, 403, 571 N.E.2d 218 (1991).

In contrast, defendants' argument in the trial court relied on cases that rejected the lost chance doctrine. These cases held that the lost chance doctrine relaxed the traditional proximate cause standard by allowing the causation issue to go to a jury where there was no evidence of a reasonable probability that the defendant's negligence caused the plaintiff's injury. *Hare v. Foster G. McGaw Hospital*, 192 Ill. App. 3d 1031, 1038, 549 N.E.2d 778 (1989).

In *Hare*, the court indicated that to establish proximate cause in a wrongful death suit, the plaintiff must show:

> "[T]he patient would more probably than not have survived if he had been treated properly. If the patient would probably have died from the underlying illness, then it was the illness and not the doctor's malpractice which caused the death. Therefore, a patient whose doctor's malpractice deprived him of a 49% chance of surviving his illness would be denied recovery on the basis that it was more probable than not that he died from the illness. On the other hand, a patient deprived by malpractice of a 51% chance of survival would recover the full extent of damages for the death because it was more probable than not that the malpractice caused the death." *Hare*, 192 Ill. App. 3d at 1035-36.

See also *Netto v. Goldenberg*, 266 Ill. App. 3d 174, 181, 640 N.E.2d 948, 954 (1994) ("Essentially the *Northern Trust Co.* and *Chambers* courts removed the proximate cause element from medical negligence actions"); *Russell v. Subbiah*, 149 Ill. App. 3d 268, 271, 500 N.E.2d 138, 139-41 (1986) (affirmed summary judgment where the plaintiff's expert indicated that, with earlier diagnosis by the defendant, plaintiff would have had a 50/50 chance of full recovery in a brief period of time, rather than the lengthy 24-month recovery experienced).

Under the line of cases relied upon by defendants in the trial court, a plaintiff's estimated chance of surviving or recovering from an existing illness or injury must be greater than 50% in order for plaintiff to be able to establish the defendant's conduct proximately

caused injury. On this basis, the trial court in the present case granted defendants' motions for summary judgment on September 10, 1996. However, on April 17, 1997, the Illinois Supreme Court in the *Holton* case harmonized the traditional concept of proximate causation with the lost chance doctrine.

In *Holton*, the trial court denied defendant's motion for judgment notwithstanding the verdict. The plaintiff contended that the failure of defendant's nursing staff to accurately report the progression of her decline into paresis was a proximate cause of her paralysis. The evidence at trial revealed that the plaintiff went to the hospital complaining of numbness below the waist and tingling in her leg. The next day she noticed increasing difficulty in moving her leg. She reported this to the attending nurses and aides, who failed to notify a doctor. The neurosurgeon on call testified that if he had been informed of the plaintiff's change of condition, he would have come to the hospital immediately and he would have had enough time to make a proper diagnosis and ease the pressure on the spinal cord.

The supreme court in *Holton* held that the loss of chance concept, when properly analyzed, does not relax or lower plaintiff's burden of proving causation. The court reaffirmed the standard for proximate cause found in *Borowski v. Von Solbrig*, 60 Ill. 2d 418, 424, 328 N.E.2d 301 (1975). In *Borowski*, the Illinois Supreme Court rejected the defendant's argument that the plaintiff should be required to prove that had the defendant not been negligent, a better result would have occurred.

At issue in *Borowski* was whether plaintiff's leg amputation was caused by defendant's failure to treat a circulatory problem in his leg that occurred after treatment for a fracture to the leg from a car crash. The court, in concluding that to require the plaintiff to prove a "better result" would inject too many collateral issues into a malpractice trial, stated: "It is unnecessary to extend the burden-of-proof requirements of a medical malpractice case beyond those of an ordinary negligence case by adding the further requirement that the plaintiff prove a better result would have been achieved absent the alleged negligence of the doctor." *Borowski*, 60 Ill. 2d at 424.

The supreme court in *Holton* discussed the *Borowski* standard and noted that applying the loss of chance doctrine does not relax or lower plaintiff's burden of proving causation:

> "We reaffirm the *Borowski* holding. The traditional statement of proximate cause requires plaintiff to prove that defendant's negligence 'more probably than not' caused plaintiff's injury. The 'better result test' is not a part of plaintiff's burden of proof." *Holton*, 176 Ill. 2d at 107.

■ While this standard accurately reflects a plaintiff's burden of proof at trial, it does not accurately set forth a plaintiff's burden on a summary judgment motion. *Gatlin v. Ruder*, 137 Ill. 2d 284, 292-93, 560 N.E.2d 586 (1990). The purpose of a summary judgment proceeding "is not to try an issue of fact but rather to determine whether there is an issue of fact to be tried." *Beverly Bank v. Alsip Bank*, 106 Ill. App. 3d 1012, 1016, 436 N.E.2d 598 (1982). A motion for summary judgment can only succeed "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2— 1005(c) (West 1996); see *Purtill v. Hess*, 111 Ill. 2d 229, 240, 489 N.E.2d 867 (1986); *Gatlin*, 137 Ill. 2d at 293. Where as in this case there are no depositions, reports or affidavits other than those of plaintiff's witnesses, summary judgment for defendant would be proper only if plaintiff failed to demonstrate an ability to offer evidence at trial on the proximate cause of his injury. *Purtill v. Hess*, 111 Ill. 2d at 229.

■ Plaintiff asserts that, in light of *Holton*, the evidence has established a genuine issue of material fact as to whether defendants proximately caused Mr. Meck's injuries and death. Defendants attempt to distinguish *Holton* by arguing that this is a case of first impression as Mr. Meck was dead before defendants reached him; therefore, the harm defendants were to guard against had already occurred and any chance Mr. Meck had at survival was already lost. Defendants contend that, absent defibrillation by the paramedics, Mr. Meck could not have been resuscitated. Thus, defendants' argument suggests that if Mr. Meck's chance of survival was zero percent absent intervention by the defendants, the conduct of the defendants could not have deprived Mr. Meck of any chance of survival because he was already deceased.

We note that defendants' contention that Mr. Meck was dead is contradicted by the fact that Mr. Meck was revived, transported to the hospital alive, and lived for four days. We reject defendants' further argument that they could not be held responsible for alleged misconduct because Mr. Meck's odds of survival when EMTs and paramedics arrived were not sufficiently high for defendants' actions to be causally related to his death.

As noted by the supreme court in *Holton*, "[d]isallowing tort recovery *** on the theory that the patient was already too ill to survive or recover may operate as a disincentive on the part of health care providers to administer quality medical care to critically ill or injured patients." *Holton*, 176 Ill. 2d at 119.

Defendants' argument further ignores evidence from the report of plaintiff's expert and treating physician, Dr. Babos:

> "Roy Meck could have had an excellent chance of recovery *** he went on to have severe neurological damage, status epilepticus and eventual death because the EMTs and Paramedics *** grossly mismanaged this patient from start to finish."

Proximate cause is clearly an issue of material fact and "summary judgment cannot be entered" on the question of causation because it is preeminently a question of fact. *Gatlin*, 137 Ill. 2d at 293. Further, the question of whether a defendant's misconduct is a proximate cause of a plaintiff's injury or death is generally one to be determined by the trier of fact. *Holton*, 176 Ill. 2d at 107.

Applying the standard established by statute and reaffirmed by the supreme court, we hold there is a genuine issue of material fact as to whether defendants' alleged willful and wanton conduct proximately caused the death of Mr. Meck. An issue of material fact regarding defendants' conduct was established from the totality of the evidence presented during the summary judgment proceeding.

We recognize that the trial court did not have the benefit of the *Holton* opinion when it granted defendants' motions for summary judgment. However, in light of the recent holding in *Holton*, we find that the trial court erred in granting summary judgment based on defendants' argument that plaintiff could not demonstrate proximate causation as a matter of law because Roy Meck had a 50% chance or less of surviving his heart attack absent the alleged misconduct of the defendants.

The statistical probability of Mr. Meck's survival is not relevant to the question of whether defendants' conduct caused injury or death. It may be relevant to the degree of injury or amount of damages, but that issue is for the trier of fact and cannot be determined as a matter of law at the summary judgment stage of the proceeding.

" 'Not allowing such a case to be decided by a jury means that statistical proof of a less than 50% chance would be dispositive, even though no expert in the world could prospectively state who would survive and who would die. That is why doctors treat all patients, not just those with better than even odds.' " *Holton*, 176 Ill. 2d at 120, quoting T. Lavin & G. Ziebell, *Lost Chance of Survival: Is it a Lost Cause in Illinois?*, 84 Ill. B.J. 458, 462 (1996).

For the foregoing reasons, we find that the trial court erred in

731

granting defendants' motions for summary judgment and we reverse and remand for further action consistent with this opinion.

Reversed and remanded.

BUCKLEY, P.J., and GALLAGHER, J., concur.