758 N.E.2d 848 (2001)
197 Ill.2d 466
259 Ill.Dec. 440
Connie HARRISON, Appellee,
v.
HARDIN COUNTY COMMUNITY UNIT SCHOOL DISTRICT NO. 1, Appellant.
No. 89661.
Supreme Court of Illinois.
October 18, 2001.
*849 Charles Schmidt, of Brandon, Schmidt, Goffinet & Solverson, Carbondale, Nancy Fredman Krent, of Hodges, Loizzi, Eisenhammer, Rodick & Kohn, Arlington Heights, for appellant.
Stephen W. Stone, of Harris, Lambert, Howerton & Dorris, Marion, for appellee.
Justice GARMAN delivered the opinion of the court:
In December 1995, plaintiff, Connie Harrison, filed a civil action against Hardin *850 County Community Unit School District No. 1 (school district), Joshua Davis and his grandfather, Jimmy Davis, for injuries she sustained in a motor vehicle accident. Claims against Jimmy Davis and Joshua Davis, who was driving his grandfather's car when he lost control and struck plaintiff's vehicle, were settled. Plaintiff's complaint alleged that the school district was liable because its personnel were willful and wanton in refusing Joshua Davis's request to leave school early due to inclement weather and deteriorating road conditions. The school district filed a motion for summary judgment maintaining, inter alia, that it was entitled to immunity under section 2-201 of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/2-201 (West 1994)). The circuit court of Hardin County granted the school district summary judgment. The appellate court reversed. 313 Ill.App.3d 702, 246 Ill.Dec. 381, 730 N.E.2d 61. We granted the school district's petition for leave to appeal pursuant to Supreme Court Rule 315 (177 Ill.2d R. 315).

BACKGROUND
On December 8, 1995, Joshua Davis, age 16, drove his grandfather's car to school. Joshua was a student at Hardin County High School, which is owned and operated by the school district. During the school day, a mixture of freezing rain, sleet, and snow began falling in Hardin County.
At his evidentiary deposition, Joshua Davis testified that during his lunch period, at approximately 11:40 a.m., he approached his principal, Ron Brumley, and asked if he could leave school early because of the deteriorating weather conditions. Joshua told Brumley that he wanted to leave early before it started snowing heavily because he "didn't want to have a wreck." Brumley told Joshua that all of the students who drove to school would be dismissed early, at a certain time after lunch. After the lunch period ended, Joshua went to his next class and asked his teacher if he could use the phone to call his parents to get permission to leave early. The teacher told Joshua to sit down and that school would be dismissed early.
Joshua further testified that school was dismissed at approximately 12:15 p.m. that day. Accompanied by three other students, including his girlfriend, Michelle Williams, Joshua drove his grandfather's car from school. Joshua passed the driveway to his home and continued toward his girlfriend's house. En route, Joshua lost control of the vehicle, crossed the center line, and struck the front of plaintiff's vehicle. Joshua admitted that if he had wanted to ride the bus, that option would have been available to him. Joshua further acknowledged that the accident would not have occurred had he not been taking his girlfriend home and that there was no reason why he could not have asked his girlfriend to ride home on the bus and driven himself directly home.
Ron Brumley, principal of Hardin County High School, testified that a procedure was in place by which parents could call the school and request that their children be dismissed early. If an individual student asked to leave early due to inclement weather, the school usually required parental permission. The school allowed students to call home to ask their parents if they could leave school early. Brumley stated he may deny a student's request to call home if school was going to be dismissed within a short period of time.
In plaintiff's complaint, she alleged that the accident and her injuries were "directly and proximately caused" by the following willful and wanton acts committed by school district personnel:

*851 "a. Refused to allow Joshua Davis to leave school when it was safe to do so given the deteriorating weather conditions on local roads;
b. Permitted Joshua Davis to leave school property in a motor vehicle after having been advised by the student that he had difficulty driving in inclement weather conditions;
c. Failed to call Joshua Davis' grandparents, parents, and/or adult guardian to have him picked up from school."
The circuit court granted the school district's motion for summary judgment based on the immunity protections of section 2-201 of the Act. The appellate court, with one justice dissenting, held that Brumley's decision not to allow Joshua to leave early was not an exercise of discretion in the determination of policy and, thus, did not fall within the protections of the Act. 313 Ill.App.3d at 707, 246 Ill.Dec. 381, 730 N.E.2d 61. The appellate court reversed the judgment of the circuit court granting summary judgment in favor of the school district. 313 Ill.App.3d at 708, 246 Ill.Dec. 381, 730 N.E.2d 61. We granted the school district's petition for leave to appeal pursuant to Supreme Court Rule 315 (177 Ill.2d R. 315).

ANALYSIS
Summary judgment is proper "where the pleadings, affidavits, depositions, admissions, and exhibits on file, when viewed in the light most favorable to the nonmovant, reveal that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Busch v. Graphic Color Corp., 169 Ill.2d 325, 333, 214 Ill.Dec. 831, 662 N.E.2d 397 (1996); 735 ILCS 5/2-1005(c) (West 1996). If the party moving for summary judgment supplies facts that, if not contradicted, would warrant judgment in its favor as a matter of law, the opponent cannot rest on his pleadings to create a genuine issue of material fact. Purtill v. Hess, 111 Ill.2d 229, 240-41, 95 Ill.Dec. 305, 489 N.E.2d 867 (1986); Carruthers v. B.C. Christopher & Co., 57 Ill.2d 376, 380, 313 N.E.2d 457 (1974); see also Fitzpatrick v. Human Rights Comm'n, 267 Ill.App.3d 386, 391, 204 Ill.Dec. 785, 642 N.E.2d 486 (1994). Our review of an order granting summary judgment is de novo. Zekman v. Direct American Marketers, Inc., 182 Ill.2d 359, 374, 231 Ill.Dec. 80, 695 N.E.2d 853 (1998).
In 1959, this court abolished the doctrine of sovereign immunity. See Molitor v. Kaneland Community Unit District No. 302, 18 Ill.2d 11, 163 N.E.2d 89 (1959). In response to Molitor, the General Assembly, in 1965, enacted the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/1-101 et seq. (West 1998)). Under the Act, Illinois adopted the principle that local governmental units are liable in tort, but limited this liability with an extensive list of immunities based on specific government functions. Burdinie v. Village of Glendale Heights, 139 Ill.2d 501, 506, 152 Ill.Dec. 121, 565 N.E.2d 654 (1990). The 1970 Illinois Constitution also abolished the doctrine of sovereign immunity, except as the General Assembly may provide by law. Ill. Const. 1970, art. XIII, § 4. Accordingly, the Act governs whether and in what situations local governmental units are immune from civil liability. See Epstein v. Chicago Board of Education, 178 Ill.2d 370, 375, 227 Ill.Dec. 560, 687 N.E.2d 1042 (1997).
In this case, the school district claims that it is absolutely immune from liability under the Act. Section 2-201 states:
"Except as otherwise provided by Statute, a public employee serving in a *852 position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201 (West 1994).
Also relevant here is section 2-109 of the Act, which immunizes a local public entity from liability for an injury resulting from an employee's act or omission where the employee is not liable. 745 ILCS 10/2-109 (West 1994). In construing the Act, our primary goal is to ascertain and give effect to the intent of the legislature. Harinek v. 161 North Clark Street Ltd. Partnership, 181 Ill.2d 335, 340, 230 Ill.Dec. 11, 692 N.E.2d 1177 (1998). Further, we will not depart from the plain language of the Act by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent. In re Chicago Flood Litigation, 176 Ill.2d 179, 193, 223 Ill.Dec. 532, 680 N.E.2d 265 (1997). These grants of immunity to public officials are premised upon the idea that such officials should be allowed to exercise their judgment in rendering decisions without fear that a good-faith mistake might subject them to liability. See White v. Village of Homewood, 285 Ill.App.3d 496, 502, 220 Ill.Dec. 671, 673 N.E.2d 1092 (1996).
This court has determined that section 2-201 requires the act or omission to be both a determination of policy and an exercise of discretion. Harinek, 181 Ill.2d at 341, 230 Ill.Dec. 11, 692 N.E.2d 1177. Cases considering this Act have recognized a distinction between "discretionary duties, the negligent performance of which does not subject a municipality to tort liability, and ministerial duties, the negligent performance of which can subject a municipality to tort liability." Snyder v. Curran Township, 167 Ill.2d 466, 473, 212 Ill.Dec. 643, 657 N.E.2d 988 (1995). This court has held that "discretionary acts are those which are unique to a particular public office, while ministerial acts are those which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act." Snyder, 167 Ill.2d at 474, 212 Ill.Dec. 643, 657 N.E.2d 988. Further, this court has defined policy decisions as those that require the governmental entity or employee to balance competing interests and to make a judgment call as to what solutions will best serve each of those interests. West v. Kirkham, 147 Ill.2d 1, 11, 167 Ill.Dec. 974, 588 N.E.2d 1104 (1992). Both parties agree that principal Brumley's actions were discretionary in nature. However, they disagree as to whether Brumley was determining policy when he denied Joshua's request to be dismissed early.
In Harinek, an office worker was struck by a door during a fire drill after being instructed by the City of Chicago's fire marshall to stand near the door. This court, applying the Kirkham definition of policy decisions, found that section 2-201 immunized the City from liability because the fire marshall's decision involved a determination of policy and an exercise of discretion. Harinek, 181 Ill.2d at 343, 230 Ill.Dec. 11, 692 N.E.2d 1177. We stated that in planning and conducting fire drills, the fire marshall had to balance various interests that might compete for the time and resources of the fire department, including the interests of efficiency and safety. Harinek, 181 Ill.2d at 342, 230 Ill.Dec. 11, 692 N.E.2d 1177. The marshall's decision regarding the placement of fire drill participants served to balance these interests, and the marshall's "acts and omissions were undertaken in determining policy within the meaning of the statute." Harinek, 181 Ill.2d at 343, 230 Ill.Dec. 11, 692 N.E.2d 1177.
*853 The appellate court applied the Harinek principles in Johnson v. Decatur Park District, 301 Ill.App.3d 798, 235 Ill.Dec. 67, 704 N.E.2d 416 (1998). In that case, a youth was injured in a fall at a power tumbling practice and alleged that the park district, which had hired his coach, acted willfully and wantonly in failing to warn of the dangers associated with using a mini-trampoline and mats and to provide certain safety measures and equipment. The plaintiffs also alleged negligence and willful and wanton conduct on the part of the coach. Johnson, 301 Ill.App.3d at 801, 235 Ill.Dec. 67, 704 N.E.2d 416. The appellate court affirmed the circuit court's grant of summary judgment in favor of the park district and its coach pursuant to the Act. Johnson, 301 Ill.App.3d at 810, 235 Ill.Dec. 67, 704 N.E.2d 416. As to the coach, the court found that he determined what maneuvers the tumblers would perform, whether each tumbler was capable of performing those maneuvers, and what equipment and safety precautions were needed. Johnson, 301 Ill.App.3d at 809, 235 Ill.Dec. 67, 704 N.E.2d 416. Thus, the coach had to consider each tumbler's abilities, balance these interests against the resources of the park district, and make a judgment as to how best to perform his coaching duties. The court found that this qualified as the making of policy under Harinek, and thus the coach's actions were immunized under section 2-201 of the Act. Johnson, 301 Ill.App.3d at 809-10, 235 Ill. Dec. 67, 704 N.E.2d 416.
In this case, Brumley had to consider the circumstances surrounding Joshua's request, including the weather and road conditions, Joshua's safety, and the lack of permission from Joshua's parents or guardian. Brumley then had to balance the competing interests of Joshua's desire to leave early before the weather worsened with that of the school's interest in an orderly dismissal, along with the possibility that if one student was dismissed early then, in the future, every student would want to leave early. Brumley then had to make a judgment as to how best to perform his duties as principal and find a solution that best served all of these interests. Just as the actions of the fire marshall in Harinek and the coach in Johnson constituted policy determinations, Brumley also made a policy decision when he refused Joshua's request for early dismissal and instead told him to wait for the entire school to be dismissed early.
Plaintiff argues that Brumley could not have been determining policy because his decision only impacted an individual student. In that regard, the appellate court stated that Brumley's decision was not an exercise of discretion in the determination of policy because it was not a decision at the "planning level" and "did not involve the formulation of principles to achieve a common public benefit." 313 Ill.App.3d at 707, 246 Ill.Dec. 381, 730 N.E.2d 61. We disagree. The language of section 2-201 and the cases considering its applicability do not require that the decision achieve a common public benefit to come within the Act's immunity protections. Under the principles set forth in Harinek, Brumley's actions clearly qualify as the making of policy. Based on this analysis, we hold that the school district enjoys the immunity protections provided under section 2-201.

CONCLUSION
For the foregoing reasons, the judgment of the appellate court is reversed, and the judgment of the circuit court of Hardin County is affirmed.
Appellate court judgment reversed; circuit court judgment affirmed.
*854 Chief Justice HARRISON, specially concurring:
I agree with the result reached by the majority. I do so, however, for reasons other than those stated in the majority opinion.
Based upon the reasons set forth in my dissent in Harinek v. 161 North Clark Street Ltd. Partnership, 181 Ill.2d 335, 355-56, 230 Ill.Dec. 11, 692 N.E.2d 1177 (1998) (Harrison, J., dissenting), I do not believe that the school district was entitled to immunity under section 2-201 of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/2-201 (West 1994)), because principal Brumley was not determining policy when he denied Joshua's request to be dismissed early. However, a reviewing court may affirm a grant of summary judgment on any basis found in the record (see Alliance Syndicate, Inc. v. Parsec, Inc., 318 Ill. App.3d 590, 599, 251 Ill.Dec. 861, 741 N.E.2d 1039 (2000); Lawrence & Allen, Inc. v. Cambridge Human Resource Group, Inc., 292 Ill.App.3d 131, 135, 226 Ill.Dec. 331, 685 N.E.2d 434 (1997)), and I believe that summary judgment was properly granted because uncontradicted evidence advanced in support of the school district's motion for summary judgment conclusively establishes that the alleged misconduct by the school district did not proximately cause the accident or plaintiff's injuries.
To properly state a cause of action for willful and wanton conduct, as asserted herein, the plaintiff must establish that the defendant owed a duty of care, that the defendant breached this duty, and that the plaintiff incurred injuries proximately caused by the breach. See Urban v. Village of Lincolnshire, 272 Ill.App.3d 1087, 1094, 209 Ill.Dec. 505, 651 N.E.2d 683 (1995); Laco v. City of Chicago, 154 Ill. App.3d 498, 502, 107 Ill.Dec. 400, 507 N.E.2d 64 (1987). In its motion for summary judgment, the school district claimed, inter alia, that "[v]iewing the facts as alleged in the light most favorable to Plaintiff, the conduct of the School District was not sufficiently closely connected with Plaintiff's injury so that, given considerations of justice or policy, the School District should be held liable for Plaintiff's injury."
The issue of the existence of proximate cause is ordinarily determined by the trier of fact. Lee v. Chicago Transit Authority, 152 Ill.2d 432, 454, 178 Ill.Dec. 699, 605 N.E.2d 493 (1992). However, where the facts are undisputed and reasonable men could not differ as to the inferences to be drawn from those facts, proximate cause may be determined as a matter of law. Merlo v. Public Service Co. of Northern Illinois, 381 Ill. 300, 318, 45 N.E.2d 665 (1942); see also Kimber v. City of Warrenville, 248 Ill.App.3d 361, 367, 187 Ill.Dec. 542, 617 N.E.2d 1263 (1993). Proximate cause is an issue of material fact in a negligence suit (Gatlin v. Ruder, 137 Ill.2d 284, 293, 148 Ill.Dec. 188, 560 N.E.2d 586 (1990); see Meck v. Paramedic Services, 296 Ill.App.3d 720, 730, 231 Ill.Dec. 202, 695 N.E.2d 1321 (1998)), and where a plaintiff does not present any evidence in reply to counter the facts presented by a defendant in support of a motion for summary judgment on that issue, summary judgment is properly granted (see Kennedy v. Joseph T. Ryerson & Sons, Inc., 182 Ill.App.3d 914, 919, 131 Ill.Dec. 373, 538 N.E.2d 748 (1989); see also Purtill, 111 Ill.2d at 241, 95 Ill.Dec. 305, 489 N.E.2d 867 (facts contained in an affidavit in support of a motion for summary judgment which are not contradicted by counteraffidavit are admitted and must be taken as true for purposes of the motion)).
Proximate cause encompasses cause in fact and legal cause. Lee, 152 Ill.2d at *855 455, 178 Ill.Dec. 699, 605 N.E.2d 493. The key inquiry into cause in fact is whether the defendant's conduct was "a material element and a substantial factor in bringing about the injury." Lee, 152 Ill.2d at 455, 178 Ill.Dec. 699, 605 N.E.2d 493. The key inquiry into cause in fact is whether the defendant's conduct was "a material element and a substantial factor in bringing about the injury." Legal cause is a question of foreseeability: a negligent act is a proximate cause of an injury if the injury is of a type that a reasonable person would see as a likely result of his or her conduct. Lee, 152 Ill.2d at 456, 178 Ill. Dec. 699, 605 N.E.2d 493; see also Williams v. Chicago Board of Education, 267 Ill.App.3d 446, 451, 204 Ill.Dec. 863, 642 N.E.2d 764 (1994). If cause in fact is established, the next question is whether the defendant should be held legally responsible for it. See Kimber, 248 Ill. App.3d at 367, 187 Ill.Dec. 542, 617 N.E.2d 1263. The test to be applied in all proximate cause cases is whether the first wrongdoer reasonably might have anticipated the intervening efficient cause as a natural and probable result of the first party's own act or omission. Seith v. Commonwealth Electric Co., 241 Ill. 252, 260, 89 N.E. 425 (1909). Even assuming arguendo that the school district's acts or omissions were a cause in fact of the accident, the evidence establishes that the school district could not reasonably have anticipated the independent acts of Joshua Davis which directly caused the accident and plaintiff's injuries.
Here, where the undisputed facts show that the school district's conduct was not the legal cause of plaintiff's injury, summary judgment on this issue is proper as a matter of law. Joshua's deposition testimony makes clear that the accident which injured plaintiff occurred because, after professing a desire to avoid driving in inclement weather, he made the independent decision to drive past his home and toward the home of his girlfriend, despite the fact that bus transportation was available. The school district and its personnel neither caused Joshua to make that decision, nor reasonably could have foreseen that decision as a likely consequence of their conduct in dismissing Joshua at the same time as the other students who drove to school. Thus, any act or omission committed by the school district would be too remote to be considered a proximate cause of the accident. See Urban, 272 Ill.App.3d at 1097, 209 Ill.Dec. 505, 651 N.E.2d 683, citing Kimber, 248 Ill.App.3d at 370-71, 187 Ill.Dec. 542, 617 N.E.2d 1263 (where police officer abandoned pursuit, his conduct was too remote to have been a proximate cause of the accident which led to the decedent's death).
Therefore, one element of plaintiff's claim is lacking where, based on Joshua's deposition testimony presented by the school district in support of its motion for summary judgment, there remains no genuine issue of material fact as to whether the alleged acts by the school district proximately caused plaintiff's injury. Joshua's testimony conclusively demonstrates that he was on the road at the time of the accident because he voluntarily chose to drive his girlfriend and others home.
Based on this analysis, I would hold that the circuit court properly granted summary judgment to the school district.
Justice KILBRIDE joins in this special concurrence.